[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S REQUEST FOR SANCTIONS
On November 13, 2002, the defendant noticed depositions to be taken on November 21, of an investment representative and records custodian of Deutsche Bank Securities, and of Paine Webber Group. Notices were served upon counsel for the plaintiff together with subpoenas duces tecum for financial records of accounts of both parties.[1] No objection to the deposition, motion for protective order, or motion to quash the subpoena was filed by the defendant prior to the scheduled deposition date, or at any time thereafter.
On November 20, by fax, defendant's counsel notified the legal departments of both Deutsche Bank and Paine Webber that production of documents in response to the subpoenas would be acceptable in lieu of attendance of the deponents on the scheduled date. Copies of these letters were not sent to plaintiffs counsel. On November 20, 2002, defendant's counsel also notified plaintiff's attorney that the deposition would not proceed on November 21. At said time, the documents were sent by Deutsche Bank Securities and Paine Webber, prior to the scheduled date, without notification of plaintiff's counsel. Upon receipt, the defendant's counsel made use of the documents. At a pretrial on November 25, the defendant acknowledged possession of the documents, some 3000 pages. On December 4, 2002, the plaintiff filed the pending motion for sanctions, and on December 6th, 12th, and 19th, copies of the documents were sent to the plaintiff.
 Discussion
The deponents, on whom subpoenas for depositions and financial records of the parties were served, were not parties to this action. At common law, a subpoena duces tecum was not an order compelling a witness to turn documents over to the subpoenaing party. The purpose was to require the witness to produce those documents before a court which would make a determination as to whether they should be turned over, inspected, and/or CT Page 1745 admitted into evidence.
 "[T]he familiar process by which the production of documents in the hands of third persons is secured is the subpoena duces tecum. One upon whom such process is served is bound to produce the required document. The production thus compelled does not, however, signify a delivery of the papers into the hands of the party calling for their production or of his counsel, or a submission of them to his examination; neither does such a consequence necessarily follow. The production which the processor of the paper is required to make consists of bringing them into court and putting them into its control. Having by this act complied with the order of production, the producer may ask the court to pass upon any claim of privilege, or to make a personal inspection of the document to determine their relevancy on their relevant parts before their submission to counsel; and to make any proper order for the protection, in such submission, of the interests of the producer, as, for example, by withholding from the view of counsel any irrelevant matter which he ought not to be permitted to examine. The future of documents after they have, pursuant to an order of production, passed into the control of the court, is for its determination, and is a production which has been completed." Banks v. Connecticut Railway Lighting Co., 79 Conn. 116, 118-119 (1906).
Connecticut General Statutes § 52-148 (e) and Practice Book §13-26 — § 13-32 now permit a party to obtain copies of documents from non-parties through the deposition process. A subpoena may be issued commanding the deponent to produce and to permit inspection and copying of designated books, papers and documents related to matters within the scope of the permitted examination. Connecticut General Statute § 52-148e (b); Practice Book § 13-28(c). Although documents produced for inspection during the examination may be inspected and copied by any party, Practice Book § 13-30(f), the person to be deposed may file objections to the inspection or copying, and if such objection is made the documents may not be inspected or copied except pursuant to a court order. Practice Book § 13-28(d).
Here, before the noticed date, the defendant advised the deponents by letter, and without a copy to the plaintiff, that they need not attend if CT Page 1746 the subpoened documents were produced in advance of the scheduled date. The deponents accepted this invitation and sent the documents to the defendant. The only information provided to the plaintiff about the deposition and document request was that the defendant would not proceed with the deposition on the scheduled date.
The plaintiff seeks sanctions for the defendant's use of the deposition subpoena to obtain the documents without notifying the plaintiff of their receipt.
Courts have been faced with similar situations in personal injury cases where medical records of a plaintiff were subpoened from a physician to a deposition and the defendant offered, in lieu of attendance, that the doctor supply copies of the records. In Martini v. Shelter Rock Realty, Judge Pellegrino ruled that "in the face of the plaintiff's motion to quash, the defendant had no right to copy or retain, for in camera inspection, any medical records sent to him pursuant to a subpoena", but determined not to disqualify defense counsel because the attorney had not examined or inspected the documents. Martini v. Shelter Rock Realty, Superior Court, judicial district of Waterbury, Docket No. 113425,1996 Ct. Sup. 459, 15 CLR 610 (Jan. 19, 1996, Pellegrino, J.). He did, however, set a hearing to consider monetary sanctions. In Dawid v.Alves, Judge Rush held that it was not appropriate for counsel to excuse a plaintiff's doctor in return for forwarding medical records. Dawid v.Alves, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0333683 (May 19, 1997, Rush, J.) (See attachments to Plaintiff's Motion to Disqualify, Motion to Preclude, Motion for Sanctions and Motion for Contempt in Aguilar v. Martin et. al., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 360196 (May 17, 2000)). In McLaughlin v. McNeil, et. al., Judge Ford granted a motion to disqualify defense counsel, granted a motion for protective order, and granted a motion for sanctions when counsel cancelled a deposition after receipt of subpoened records. McLaughlin v. McNeil, et.al., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0328787 (July 23, 1998, Ford, J.), (See attachments to Plaintiffs Motion to Disqualify, Motion to Preclude, Motion for Sanctions and Motion for Contempt in Aguilar v. Martin et. al., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 360196 (May 17, 2000)). In Smith v. Douglass, Judge Melville disqualified defense counsel. He indicated that the practice at issue was "reprehensible and not in our rules of practice. And for that reason I think it is important that the message get out to all people so that this situation does not occur again. If it does occur again, more drastic action will be taken." Smithv. Douglass, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0336713 (February 6, 1999, Melville, J.), (See CT Page 1747 attachments to Plaintiffs Motion to Disqualify, Motion to Preclude, Motion for Sanctions and Motion for Contempt in Aguilar v. Martin et.al., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 360196 (May 17, 2000)).
Counsel has not cited, and the court is not aware of, any prior decision on this issue in a dissolution action. This is not surprising because the major focus of discovery in any dissolution case relates to the finances of the parties, their earnings and assets, wherever that information may be found. Practice Book § 25-32 requires, upon request of a party in a dissolution action, that the opposing parties exchange documents relating to finances including 24 months of statements of accounts maintained with any financial institution, including banks, brokers and financial managers, as well as 1099 and K-1 forms for the past three years. Thus, even without a deposition and subpoena, the plaintiff was required to produce a large part of the documents at issue.
The plaintiff complains that he first learned that the defendant was in possession of the investment documents at the time of the pretrial, November 25, 2002, some one year after the action was filed. In light of the requirement of Practice Book § 25-32, the documents should have been ready for production if not already exchanged. The parties had already expended an enormous amount of time and effort on discovery proceedings.[2] Moreover, as to the subpoena by the defendant of her own records from said institutions, it should have come as no surprise that as of the pretrial the defendant had possession of copies of her own account records. The discovery history here is an example of the discovery process gone wrong. The amount of legal time and effort which was required because of failures to comply with discovery requests and orders, and the number of court proceedings related thereto, has clearly caused the parties to incur unnecessary and unwarranted legal expenses and a waste of judicial time and resources.
The question presented by the plaintiff's present request is whether, in this divorce action, the defendant's counsel should be sanctioned for their method of obtaining financial records, whether such actions violated the rules of practice or statutes, and if so, whether sanctions would be appropriate. Important the resolution of these issues is the nature of the documents at issue. The documents were not medical records which are privileged by statute and are not to be disclosed unless authorized by the patient, Conn. Gen. Stat. § 52-146 (o). Such records are protected, even when an authorization has been provided, with a requirement for a court order for inspection or copying if a motion to quash is filed before a scheduled deposition. Conn. Gen. Stat. §52-148e (c). These protections are required because such records may CT Page 1748 contain sensitive and privileged information not relevant to the issues in the action.
The records at issue were financial records of the parties' investment accounts. These records were, in a dissolution action, basic to and necessary for both the parties and the court. They were itemized in the subpoena served on plaintiffs counsel and no objection to the deposition or motion to quash the subpoena was filed. The plaintiff, despite this motion, was able to, and did, participate in the pretrial and had available sufficient information about assets to present claims for relief and a proposed division of assets.
Notwithstanding that the plaintiff had actual and/or means of access to both his and his wife's investment records, the defendant should have provided the plaintiff with a copy of the letter agreeing to production of documents in lieu of attendance at the deposition, should have notified the plaintiff when the subpoened documents were received, should have provided copies to the plaintiff upon their receipt, and should not have made use of them without either an authorization or permission from the court. Failure to do so contravened and circumvented the rules of discovery and was improper. Any reference to practice methods in New York as an explanation, even if accurate, is neither appropriate nor sufficient as an excuse for this maneuver. However, in light of the history of the discovery difficulties in this case and the nature of the materials at issue, the court does not believe that the sanctions requested, including the request for referral to the Grievance Committee, is appropriate. A caution and warning, however, certainly is warranted. Counsel for both parties must recognize their obligation to make the discovery process work as intended. The process is not meant to be used as a game of hide and seek. The roadblocks interposed, here, to appropriate discovery requests for relevant materials has yielded an inordinate and excessive amount of controversy and court proceedings.
The plaintiff also complains that the plaintiff's financial records were obtained in violation of the banking laws of the State of Connecticut. He claims that counsel failed to serve a "lawful" subpoena as required by C.G.S. § 36a-42 and did not strictly adhere to the timing requirements in C.G.S. § 36a-43 (a). A financial institution is permitted to disclose records in response to a lawful subpoena. C.G.S. § 36a-43 (a) provides that a financial institution shall disclose such records pursuant to a lawful subpoena "served upon it if the party seeking the records causes such subpoena . . . or a certified copy thereof to be served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed . . ." Here, subpoenas were served on counsel for the CT Page 1749 plaintiff on November 13, 2002. Production of documents was required on the date of the deposition, November 21, 2002. Production was thus required two days prior to the ten day notice requirement of § 36a-43
(a). However, the deposition was not held on the scheduled date and was not held within the 10 day period. The evidence presented failed to demonstrate a wilful attempt by the defendant to subvert the rights of the plaintiff. The sanctions requested would not be appropriate. Morganv. Brown, 219 Conn. 204, 214, 592 A.2d 925 (1991).
The financial institutions, however, did voluntarily turn over the documents to defendant's counsel without the required authorization. The plaintiff had received, prior to the delivery of the documents, notice of the deposition with the subpoena but did not file either an objection to the deposition or a motion to quash the subpoena of the documents. Although financial records in some instances may be entitled to protection because of the private nature of the information they contain, in this proceeding the records requested were those of the two parties to this dissolution proceeding. See, Marine Midland Bank v. PilgrimMortgage, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 159982, 1998 Ct. Sup. 5985, 22 CLR 2070 (May 18, 1998, Hickey, J.). As noted above, these documents were relevant and discoverable. Sanctions for claims related to the Banking Act would therefore not be appropriate.
For all the above reasons, the plaintiff's motion
 _______________ HILLER, J.