Hollie M. WILLIAMS, Plaintiff– Appellant,

v.

UTICA COLLEGE OF SYRACUSE UNIVERSITY, and Burns International Security Services Corp., Defendants–Appellants.

**Docket No. 05–1898–CV.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 9, 2005.

Decided: June 28, 2006.

Michael W. Harris of Harris & Panels, Syracuse, N.Y., for Plaintiff–Appellant.

Bartle J. Gorman of Gorman, Wasziewicz, Gorman & Schmitt, Utica, N.Y., for Defendant–Respondent Utica College of Syracuse University.

J. Mark McCarthy of Coulter, Ventre & McCarthy, Liverpool, N.Y., for Defendant–Respondent Bums International Security Services Corp.

Before: CALABRESI, B.D. PARKER, and WESLEY, Circuit Judges.

CALABRESI, Circuit Judge.

This appeal challenges a grant of summary judgment against Plaintiff–Appellant Hollie M. Williams ("Appellant" or "Williams"), who had originally brought negligence actions against Defendants–Appellees Utica College of Syracuse University ("Utica College") and Burns International Security Services Corporation ("Burns Security") after she was assaulted in her dormitory room by an unidentified assailant. The United States District Court for the Northern District of New York (Mordue, *J.*) dismissed Williams' suit at summary judgment on the grounds (1) that the risk of the attack on Williams was not foreseeable (and therefore that Appellees' *duty* to protect against the risk could not be established); (2) that there was insufficient evidence that the assailant was an intruder who had obtained access to Williams' room through a negligently-maintained entrance (and therefore that *cause* could not be shown); and (3) that the security measures adopted by Utica

College were sufficient, as a matter of law, so that a *breach* of duty could not be demonstrated by the evidence.

On appeal, while abandoning her claim against Burns Security, Williams continues to argue that Utica College acted negligently, and that its negligence was the cause of her injury. Accordingly, she challenges the District Court's grant of summary judgment as to the college. For the reasons we give below, we conclude that the District Court erred in its analysis of duty and breach. But, because we agree that Williams failed to present sufficient evidence to survive summary judgment as to causation, we affirm the grant of summary judgment.

## BACKGROUND

Nestled in upstate New York, Utica College had a student body (in 1999) of over 2000 students, 775 of whom lived in one of five on-campus dormitories. During her sophomore year, Williams shared a room on the second floor of North Hall, where, on October 26, 1999, she and her roommate—also a sophomore—were assaulted by a masked, unknown attacker. Late that morning, at around 11:30 a.m., Williams and her roommate returned to their dorm room and began to prepare lunch, leaving their door slightly ajar. Moments after they returned, a male entered the room and locked the door behind him; he had a gun that was plainly visible. The attacker threatened Williams by pressing a knife against her neck. After forcing Williams to undress and kiss her roommate, he fondled and physically rubbed up against both roommates, never removing his clothes or mask. The assailant left Williams' dorm room approximately thirty minutes after he arrived, having bound his victims' wrists to a bed with duct tape. Williams and her roommate reported that their attacker had seemingly recorded much of what transpired with a video camera he brought to the room.

According to Williams' description, the assailant was a 5′10″ white male with short, "strawberry colored hair." Dressed in a black sweater and carrying a gym bag, he had covered his face with a bandana during the encounter. Neither Williams nor her roommate recognized the assailant, and to this day, the individual has not been identified.

At the time of the attack, Utica College had in place a security policy requiring, with one exception, that all outer doors to its five residential halls be locked 24 hours a day. The exception was that during office hours, a "breezeway" entrance remained open, thereby allowing students to enter North Hall from the open quadrangle created by the four other student dormitories. During the day, this entrance was supposed to be monitored by work-study students. Utica College officials could not confirm, however, that anyone manned this post on the day of Williams' assault, and Williams and her roommate testified that they did not see anyone watching over the breezeway entrance when they returned to their room that morning.

The "Campus Security" section of the College Student Handbook, which is distributed annually to all students, outlined the school's official policy:

Residence hall outer doors are locked 24 hours a day with the exception of the breezeway door closest to the Residence Life Office in North Hall.... Security officers are stationed in each residence hall from 11:00 p.m. to 7:00 a.m. daily. In addition, these residences are staffed by full-time professional live-in resident directors who are on call 24 hours per day each day.... Visitors must register with personnel stationed at residence hall lobby desks. Off-campus guests

must be escorted at all times by the residential student he/she is visiting.[1] Despite these policies, students reportedly held and even propped open doors to the residence halls so that people could enter without registering.

In July 2002, Williams filed an amended complaint against Appellees. In it, she alleged: "The [October] assault was made possible through the failure of [Appellees] to take reasonable and proper care in training and supervising its personnel; in negligently and carelessly failing to properly train its resident advisors; in affirmatively encouraging students to leave there [sic] dormitory rooms unlocked; in negligently and carelessly allowing said dormitories to be left open and available to anyone without any supervision; in failing to undertake to protect said residents with due knowledge that people had previously entered said premises without authorization or justification; failing to properly train its security personnel; failing to have an adequate plan and in otherwise being negligent and careless in the premises."

In due course (and after discovery), Appellees sought summary judgment against Williams. The District Court granted Appellees' request, dismissing Williams' suit for three separate reasons. First, the court concluded that, because of the low history of violent crime on campus, the type of attack Williams suffered was not foreseeable. Utica College's *duty* as landlord did not, therefore, extend to the circumstances of her assault. The court stressed that in the four years prior to the attack, there had been "few significant criminal incidents on campus, and, with one exception, no crime involving intruders." The court discounted the February 1995 incident since the assault had been committed by a resident's former boyfriend at a time when the doors to the dorms were permanently unlocked. In addition, the court did not find compelling either student complaints about safety, or the warnings issued by Burns Security, which, in a report, had called for additional protective steps to be taken. The court explained its conclusion with the statement that the college was required to provide "reasonable security, not optimal security."

Second, the court justified its grant of summary judgment on the ground that, because there was no proof that the attacker was an "intruder" from outside the school, Williams could not establish that the alleged negligence was the *cause* of the assailant's presence in the dorm or the subsequent attack. Thus, the court held that there was insufficient evidence for one to conclude "that it is more likely or more reasonable than not that the criminal who assaulted plaintiff was an intruder who gained access to the premises through the breezeway door."

Finally, even to the extent that Utica College had a legal duty, as the owner and manager of North Hall, "to take reasonable steps to minimize foreseeable danger to those residing on the premises," the District Court decided that Williams' evidence of a *breach* of whatever duty existed was inadequate to survive summary judgment. In this regard, the court stressed the security precautions seemingly in effect in October 1999. These included:

---

1. The official locked door policy dated back to February 1995, when a non-resident ex-boyfriend of a female resident assaulted the resident's new boyfriend (who was himself a resident of Utica College). This had prompted the college to lock all dormitory doors, which prior to the 1995 incident, had been open from 8:00 a.m. to 7:00 p.m.. Even the breezeway entrance was locked during this period of heightened security, and was opened during office hours only after the assailant responsible for the February 1995 incident was apprehended.

"locks and peepholes on all dormitory room doors; locked exterior doors with the exception of the breezeway entrance, which was unlocked during office hours; the arrangement of the Residential Life Office so that during office hours, the occupant of the front desk could see out into the hall; and the contract with [Burns Security] to provide campus patrols around the clock and overnight security in each dormitory." On this basis, the District Court found that "the security measures maintained by Utica College fulfilled its security obligations *as a matter of law*."[2] (emphasis added)

## DISCUSSION

To prevail on a motion for summary judgment, the moving party must prove that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (internal quotation marks omitted), drawing all reasonable inferences in favor of that party, *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995). We review *de novo* a district court's grant of summary judgment. *See McCarthy v. Am. Int'l Group*, 283 F.3d 121, 123 (2d Cir.2002).

■ Both parties seemingly agree, and we therefore assume, that New York law governs this diversity action. In order to establish a *prima facie* case of negligence under that state's cases, a claimant must demonstrate that: "(1) the defendant owed

the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)).

Each of these requirements was a ground of decision for the District Court, and so we consider them in turn.

*Duty*

■ The District Court held that Utica College's duty as a landlord did not extend to the October 1999 assault on Williams because that particular type of attack was not foreseeable given the history of on-campus crime at Utica College. Under the circumstances of this case, we cannot accept the District Court's conclusion as to the scope of Appellee's duty.

■ Under New York law, the question of the existence of a duty is a question of law that is "to be answered by the Court of Appeals in a broad, categorical fashion." *See Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir.2004) (citing *Stagl*, 52 F.3d at 469 (collecting New York cases)). New York cases have usefully elucidated the relation between duty and foreseeability:

> We have long held that New York landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition. Although landlords and permittees have a common-law duty to minimize foreseeable dangers on their property, including the criminal acts of third parties, they are not the insurers

---

**2.** The court also dismissed Appellant's claims against Burns Security. Williams does not, on appeal, challenge that result. Any arguments disputing that decision are therefore deemed abandoned. *See Hayut v. State University of New York*, 352 F.3d 733, 742 (2d Cir.2003).

of a visitor's safety. As we have noted, however, foreseeability and duty are not identical concepts. Foreseeability merely determines the scope of the duty once the duty is determined to exist. In cases arising out of injuries sustained on another's property, the scope of the possessor's duty is defined by past experience and the likelihood of conduct on the part of third persons ... which is likely to endanger the safety of the visitor. *Maheshwari v. City of New York*, 2 N.Y.3d 288, 294, 778 N.Y.S.2d 442, 810 N.E.2d 894 (2004) (internal citations and quotation marks omitted).

There are several problems with the District Court's analysis of foreseeability. First, it is not clear why a "few significant criminal incidents on campus" are not enough to make the issue of whether the attack on Williams was foreseeable at least a jury question. Based on Utica College's own compilation, there had been "significant" events in each of the preceding five years.[3] Moreover, as the dean of Utica College acknowledged—and as Donald Greene, President of Strategic Security Concepts, Inc., a security consulting firm, reported—there are other, undocumented assaults that occur on Utica's campus that

are not classified as "aggravated assaults." As a result, a jury could readily have found that the Utica College administration had been alerted to the presence of more crime than it publicly reported in its annual reviews.

Moreover, in *Burgos v. Aqueduct Realty Corp.*, 92 N.Y.2d 544, 684 N.Y.S.2d 139, 706 N.E.2d 1163 (1998)—the leading New York case on landlord duty with respect to intruders—in finding that the evidence of duty and of breach was sufficient to justify reversing a grant of summary judgment in favor of a defendant landlord, the New York Court of Appeals pointed out that the plaintiff's affidavit had stated, "that despite repeated complaints to the superintendent and manager, and *three* robberies in the building over the prior *three* years, none of the entrances (front door, back door and roof door) had functioning locks." *Burgos*, 92 N.Y.2d at 548–49, 684 N.Y.S.2d 139, 706 N.E.2d 1163 (emphasis added). Significantly, the Court did not seem to consider foreseeability to have been a problem worthy of discussion. *Burgos* therefore must be taken to indicate that even a few past incidents spaced over a few years may, in appropriate circum-

---

**3.** Both parties refer to the following chart, which is reproduced from Utica College's annual audits of on-campus crime:

|  | 1994 | 1995 | 1996 | 1997 | 1998 |
| --- | --- | --- | --- | --- | --- |
| **Sex Offenses** | | | | | |
| Forcible | 0 | 0 | 0 | 1 | 0 |
| Non–Forcible | 1 | 1 | 1 | 0 | 0 |
| **Robberies** | 0 | 0 | 0 | 1 | 0 |
| **Aggravated Assaults** | 1 | 0 | 0 | 0 | 1 |
| **Burglaries** | 9 | 2 | 1 | 0 | 1 |
| **Weapons Possession** | 0 | 0 | 0 | 0 | 0 |

From this one can see that, in 1994, there was one non-forcible sex offense and one ag-

gravated assault. In each of the years 1995 and 1996, there was one non-forcible sex of-

stances, be enough to allow a reasonable jury to conclude that the relevant criminal activity was foreseeable.

■ The District Court's analysis in the instant case seemed to focus on the specific *characteristics* of the previous crimes to justify its foreseeability ruling. Admittedly, none of the earlier crimes at Utica College were committed in exactly the same way as the 1999 attack on Williams. But the requirement of foreseeability does not perversely insist that a landlord be exposed to a crime that unfolds in precisely the same fashion in order to be forewarned of danger. That too is a lesson to be learned from *Burgos*.[4]

The District Court's attempt to justify its view on the ground that most of the earlier crimes were committed by residents of Utica College, and not "intruders," is also unavailing. First, the 1995 attack was committed by a resident's ex-boyfriend who was himself not a student or resident of Utica College. The District Court seems to have assumed that, because of the ex-boyfriend's relation to individuals on campus, he may have validly gained access to the dormitories, and hence, that Utica College did not have notice of the dangers of illegal entries. But this was not how Utica College perceived or reacted to the 1995 incident. On the contrary, the college responded by implementing measures designed to keep *outsiders* out. In other words, the school's reaction makes clear that it conceived of the earlier assault as a crime committed by an "intruder," not by someone who was, for practical purposes, a resident. Only foreseeability of intruder danger can explain what the school did.

Finally, the District Court's analysis of the foreseeability issue was flawed because it assumed that *only* actual prior crimes could put Utica College on notice of the risk of future crimes. In fact, Burns Security had repeatedly raised security concerns with the college. And, it had specifically focused on the need to monitor the breezeway entrance more closely. Accordingly, a jury could surely, reasonably, find that persistent suggestions by the security company hired by the school were enough to alert Appellee to the possibility that intruders might take advantage of this vulnerability and commit a crime.

In sum, neither the relative infrequency nor the character of the pre–1999 crimes support the conclusion that the attack on Williams was unforeseeable as a matter of law and that, therefore, the scope of Utica College's duty did not encompass third-party criminal assaults.

*Breach*

■ We also conclude that the District Court erred in finding that, on the facts of this case, the issue of breach of duty could be decided in Appellees' favor at summary judgment. This obviously implicates the "age-old debate as to when it is appropriate for a court to decide the question of a defendant's due care as a matter of law, rather than allowing a jury to resolve it as

---

fense. In 1997, there was one forcible sex offense and one robbery. In 1998, the year before Williams was attacked, there was an aggravated assault.

4. Appellees rely on *Karp v. Saks Fifth Ave.*, 225 A.D.2d 1014, 639 N.Y.S.2d 575 (1996). There, a woman was abducted from the defendant's parking lot, and then robbed and physically abused. The court held that such a crime was not legally foreseeable on the basis of the store's awareness of several previous incidents of vandalism and theft of property. In *Burgos*, which was decided two years after *Karp*, however, the requirement of foreseeability did not foreclose liability even though the earlier crimes were all solely property-based, whereas the plaintiff in *Burgos* had been pushed into her apartment by two assailants, beaten, and then robbed.

an issue of fact." *Stagl,* 52 F.3d at 470. In *Stagl,* we explained that, despite the venerable roots of this debate, Justice Holmes' "view—that standards of conduct ought increasingly to be fixed by the court for the sake of certainty—has been largely rejected." *Id.* (internal quotation marks and citations omitted). In so doing, we underscored the position of the New York Court of Appeals:

> It [is] particularly appropriate to leave [a finding of breach] to the jury, not only because of the idiosyncratic nature of most tort cases, or because there was room for a difference in view as to whether [the defendant's] conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process.

*Havas v. Victory Paper Stock Co.,* 49 N.Y.2d 381, 388, 426 N.Y.S.2d 233, 402 N.E.2d 1136 (1980) (citations omitted); *see also Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 520 n. 8, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980) ("What safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury.").

In the instant case, there is considerable evidence that calls into doubt the District Court's view that Utica College's safety measures were sufficient as a matter of law. For example, Mark Kovacs, who managed Utica College's residential halls as the Director of Residence Life, explained that in allowing the breezeway exception, the school intended "to the best of [its] ability ... [to] try to have students, work studies, sit at the front desk through various residence halls." When asked about who was stationed at the front desk

on October 26, 1999, Kovacs said: "There may or may not have been a work study student at the front desk." Weighing this sort of testimony and deciding whether, in the light of it, Utica College's duty to install reasonable security measures was breached is best done by a jury. Hence, it is not the sort of inquiry that should be decided at summary judgment. The District Court's conclusion to the contrary was error.

*Causation and the Intruder Requirement*

The District Court gave, however, a separate and sufficient ground for its grant of summary judgment: that Williams has not submitted sufficient evidence to establish that her assailant was an intruder, and therefore, that his presence in North Hall could be attributed to Utica College's purportedly negligent administration of the breezeway entrance. With this ground we agree.

We begin, once again, with *Burgos* in which the court stated:

> When faced with a motion for summary judgment on proximate cause grounds, a plaintiff need not prove proximate cause by a preponderance of the evidence, which is plaintiff's burden at trial. Instead, in order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries.

> In premises security cases particularly, the necessary causal link between a landlord's culpable failure to provide adequate security and a tenant's injuries resulting from a criminal attack in the building can be established only if the assailant gained access to the premises through a negligently maintained entrance. Since even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant, plaintiff can

recover only if the assailant was an intruder. Without such a requirement, landlords would be exposed to liability for virtually all criminal activity in their buildings.

*Burgos,* 92 N.Y.2d at 550–51, 684 N.Y.S.2d 139, 706 N.E.2d 1163.

Because Williams' attacker was never caught or even identified, there is no decisive proof as to whether he was or was not a resident of North Hall. This does not end the inquiry. As the *Burgos* court further explained with respect to situations in which the identity of the assailant is uncertain:

> By the same token, because victims of criminal assaults often cannot identify their attackers, a blanket rule precluding recovery whenever the attacker remains unidentified would place an impossible burden on tenants. Moreover, such a rule would undermine the deterrent effect of tort law on negligent landlords, diminishing their incentive to provide and maintain the minimally required security for their tenants....
>
> [A] plaintiff who sues a landlord for negligent failure to take minimal precautions to protect tenants from harm can satisfy the proximate cause burden at trial even where the assailant remains unidentified, if the evidence renders it more likely or more reasonable than not that the assailant was an intruder who gained access to the premises through a negligently maintained entrance.

*Burgos,* 92 N.Y.2d at 551, 684 N.Y.S.2d 139, 706 N.E.2d 1163 (citations omitted).

In other words, to survive summary judgment in the case before us, Williams must marshal *some* evidence that her attacker was an intruder. It is her burden to raise a material question of fact on that issue. But, construing—as we must—all

the evidence in Williams' favor, we still find no basis from which a reasonable jury could conclude more probably than not that her assailant was an intruder.

All Williams offered were assertions with no support in the record. In *Burgos,* in contrast, the court found that summary judgment was not appropriate despite the intruder requirement because "the plaintiff in her affidavit stated that she did not recognize her assailants, although she lived in a relatively small building and was familiar with all of the building's tenants and their families." *Burgos,* 92 N.Y.2d at 552, 684 N.Y.S.2d 139, 706 N.E.2d 1163. The North Hall dormitory is considerably larger than the small building in *Burgos,* and the Utica College student community is larger still.[5] Moreover, unlike the instant case in which Williams' assailant covered his face for the duration of the encounter, neither of the two attackers in *Burgos* wore a mask. There is all the difference in the world between a plaintiff asserting that a masked attacker must have been an outsider when insiders were numerous, and a plaintiff suggesting the same thing as to unmasked attackers in a small building. Under the circumstances, we find that Williams has not met her modest burden at summary judgment of presenting some evidence that the individual who assaulted her was someone who did not have valid access to the college campus.

Nothing we say today undercuts our holdings in *Liriano v. Hobart Corp.,* 170 F.3d 264 (2d Cir.1999) and *Zuchowicz v. United States,* 140 F.3d 381 (2d Cir.1998). In those cases we held that where a defendant's negligence significantly increased the chances of an injury and that very injury occurred, there was (in the absence of any other explanation) enough evidence of causation-in-fact to allow a jury to find

**5.** Of the 775 on-campus residents, 300 of them reside in North Hall.

such causation. *But for* the negligence, a jury could conclude, the harm would not have come about.

This position, which derives from Judge Cardozo's celebrated opinion in *Martin v. Herzog*, 228 N.Y. 164, 126 N.E. 814 (1920), and long before from *Reynolds v. Texas & Pac. R. Co.*, 37 La.Ann. 694 (La.1885), is sometimes stated as follows: where the causal link between the negligence and the harm that occurs is strong, a jury can decide that, more probably than not, the injury occurred *because of the negligence* and not in some other, inevitably unusual, way.[6]

The reasoning that underlies these cases is analogous to that which long ago was held to allow a jury to find the existence of negligence—even in the absence of direct proof of wrongdoing—in *res ipsa loquitur* cases. It also has let juries do something similar, more recently in a few cases in which negligence and its effects were directly proven, but the identity of the negligent party could only be inferred. *See, e.g., Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687 (1944). What all these situations have in common is the confluence of three factors that together led courts to allow juries to find that a necessary—but not directly proven—element for liability was present. These factors are:

● First, what is often called circumstantial evidence. (The knowledge from common experience that if "A" is present, then "B" is likely to have occurred.)

● Second, the greater capacity of the defendant than the plaintiff to explain what actually happened, or who was responsible.

● Third, a belief that an erroneous finding of no liability is, in the particular circumstances, more harmful than an erroneous finding of liability.

In some cases one factor has been stronger than another, but all three: degree of circumstantial evidence, relative knowledge, and preference in favor or against liability, have generally played a role. *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 422 (2d Cir.2004) (Calabresi, J., concurring).

Returning to the case before us, it is easy to see why—unlike *Zuchowitz* or *Liriano*—this case does not permit the requisite inference of causation to be drawn. Taking the factors in reverse order we see that:

(a) New York courts have held that a duty on landlords to prevent the entrance of interlopers exists, but that it is only a *minimal* duty. *Burgos*, 92 N.Y.2d at 548, 684 N.Y.S.2d 139, 706 N.E.2d 1163. This is close to saying that if an error is to be made in this context, it is better made in favor of the defendant than in favor of the plaintiff.

(b) Knowledge of what happened (*i.e.*, of whether the injurer was an outsider and gained entrance because of a negligently guarded breezeway) lies as much, or more, in the plaintiff as in the defendant, and

(c) the causal link (the risk of this kind of harm occurring because of the assert-

---

**6.** For a more detailed examination of the concept of causal link, *see* Guido Calabresi, *Concerning Cause and the Law of Torts: An Essay for Harry Kalven, Jr.*, 43 U. Chi. L.Rev. 69 (1975). Prosser and Keeton put the matter thus:

> And whether the defendant's negligence consists of the violation of some statutory safety regulation, or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion.

W. Keeton, D. Dobbs, R Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 41, at 270 (5th ed.1984).

ed negligence) is weak. Yes, interlopers inflict the kind of injuries that occurred. But—sadly—so do insiders. Indeed, the related crimes at Utica College in the past five years, were virtually all by insiders. While, as we said earlier, this fact is not enough to make it unforeseeable that an outsider might be the injurer, it certainly makes it much less probable.[7] The experiential link that would allow a finding that if A is there, then B is likely, is here, anything but strong.

In prior cases, in New York and in this court, where a jury was allowed to find liability—at least one of the aforementioned factors, and preferably more than one leaned in the direction of liability. In the instant case—as far as cause-in-fact is concerned—none do.

Accordingly, there is insufficient evidence of cause-in-fact to go to a jury, the grant of summary judgment for the defendant by the District Court was proper, and we AFFIRM.

---

**7.** We suspect that this is the point the District Court sought to make when it described what occurred as unforeseeable.