Rodney ROLLINS, Plaintiff,

v.

PEOPLE'S BANK CORP., Defendant.

No. 3:05cv191(MRK).

United States District Court,
D. Connecticut.

June 27, 2008.

Fed.R.Civ.P. 6(a).

Robert A. Richardson, Garrison Levin–Epstein Chimes & Richardson, New Haven, CT, for Plaintiff.

Rodney Rollins, Sanford, FL, pro se.

William J. Wenzel, Pullman & Comley, Bridgeport, CT, for Defendant.

### RULING AND ORDER

MARK R. KRAVITZ, District Judge.

In this action, Rodney Rollins sues People's Bank Corp. (The "Bank") for disclosing certain of his account information in response to a subpoena issued by a parole authority in New York. Mr. Rollins claims that the Bank should have provided him with advance notice before disclosing the account information. Originally, Mr. Rollins' principal claim against the Bank was asserted under Conn. Gen.Stat. §§ 36a–42 and 36a–43, which he argued required the Bank to provide him with advance notice

of any disclosure pursuant to a subpoena. This Court certified to the Connecticut Supreme Court the question of whether those provisions provided a cause of action, and the Supreme Court held that there is no implied private right of action under either section. *See Rollins v. People's Bank Corp.*, 283 Conn. 136, 155–56, 925 A.2d 315 (2007).

Undaunted, Mr. Rollins shifted theories to a breach of contract claim. Following discovery, both parties now move for summary judgment on Mr. Rollins' sole remaining claim. *See* Plaintiff's Motion for Summary Judgment [doc. # 69]; Defendant's Motion for Summary Judgment [doc. # 74].[1] Because the Court finds, on the basis of the undisputed facts, that the Bank did not breach its contract with Mr. Rollins in responding to the subpoena, the Court grants the Bank's motion for summary judgment and denies Mr. Rollins' motion.[2]

## I.

As Mr. Rollins recognizes, "[f]or the most part, the facts [in this case] are not in dispute." Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [doc. # 75], at 1.[3] In 1987, Mr. Rollins was arrested and charged in New York with homicide and felony possession of a weapon. A jury convicted him of manslaughter in the first degree, and he was sentenced to an indeterminate period of incarceration of five to fifteen years. In 1994, Mr. Rollins was discharged from prison and placed on parole subject to the supervision of the New York Department of Corrections, Division of Parole ("Parole Division"). While under supervision, Mr. Rollins was required to provide financial information and records to the Parole Division. As a consequence, the Parole Division knew that Mr. Rollins had accounts at the Bank. According to Mr. Rollins, the Parole Division was fully aware of his financial transactions with the Bank, his paperwork, and "everything else," because Mr. Rollins had previously reported the existence of the accounts to the Parole Division. Mr. Rollins admitted that if his parole officers had asked for any account

1. Mr. Rollins' Amended Complaint [doc. # 18] included claims for statutory violations (Counts One and Two), which the Court dismissed following the Connecticut's Supreme Court's decision, *see* Ruling and Order [doc. # 67], for breach of contract (Count Three) and for intentional infliction of emotional distress, gross negligence and negligence (Counts Four through Six). The Court dismissed Counts Four through Six for failure to state a claim for which relief could be granted. *See* Ruling & Order [doc. # 25].

2. Mr. Rollins is now proceeding *pro se*. However, he was represented by counsel during all relevant points in this case including throughout the briefing on the motions for summary judgment. Once those motions were fully briefed, Mr Rollins counsel withdrew from the case.

3. The following facts are taken from the parties' Local Rule 56 statements. In responding to the Bank's Local Rule 56(a)(1) Statement [doc. # 78], Mr. Rollins admitted most of the statements of undisputed facts. *See* Plaintiff's Local Rule 56.1(b) Statement [doc. # 75]. While Mr. Rollins denied several of the Bank's statements, he did not provide record citations to support those denials, contrary to the Court's Local Rules. Even after the Bank pointed this out, Mr. Rollins (then represented by counsel) still did not provide any record support for his denials. As a consequence, the Court will deem admitted the statements that were improperly denied and that find support in the record materials provided by the Bank. *See* D. Conn. Local Rule 56(a)(1) ("All material facts set forth in said statement will be deemed admitted unless controverted by a statement … in accordance with Local Rule 56(a)2."). *See also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir.2001); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998); *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984).

information or bank statements, he would have provided them because he did not believe he had the right to decline such a request.

The subpoenas that forms the basis of Mr. Rollins' action relates to two accounts that he maintained at the Bank. The first account, a business checking account (the "819 Account") was opened in 1996. The second account, a savings account (the "544 Account") was opened in 1999. As noted previously, while under supervision, Mr. Rollins had voluntarily produced information to the Parole Division regarding the existence and activities conducted in the 544 and 819 Accounts. Indeed, Mr. Rollins acknowledged that on August 20, 2002, he gave his parole officers permission to contact the Bank to obtain information regarding his accounts at the Bank, though he says that the parole officers did not take him up on his offer.[4]

While under supervision, Mr. Rollins had a number of confrontations with the Parole Division. In fact, on three occasions before the incident that led to this action, Mr. Rollins was arrested and detained by parole officers (and held for various periods of time up to several months) as a result of claimed parole violations. Beginning in 2000, special investigators from the Parole Division, including Officer Roosevelt Green, were assigned to determine Mr. Rollins' sources of income because the Parole Division believed that there was a discrepancy between Mr. Rollins' allegedly extravagant lifestyle and his reported earnings. After some back and forth with the Parole Division, Mr. Rollins completed a financial questionnaire and submitted it to the Parole Division.

Because the Parole Division believed that some of the information on the questionnaire was untruthful, they took Mr. Rollins into custody on August 8, 2002 for numerous alleged parole violations. Mr. Rollins was given a preliminary hearing on August 20 and 22, 2002, before two different administrative law judges in New York. One item on the questionnaire required Mr. Rollins to list all bank accounts, to which Mr. Rollins responded "NONE." The Parole Division claimed this answer was false because Mr. Rollins had two accounts at the Bank, and the Parole Division submitted documents at the hearing to show the existence of the accounts at the Bank. At the hearing, Mr. Rollins did not deny the existence of the accounts. Instead, he argued that they were business accounts and that the questionnaire called only for a list of personal bank accounts. In fact, Mr. Rollins stated under oath in open court, "I can give you the numbers to the banks, and I will gladly give you the business accounts." Def.'s Mot. for Summ. J. [doc. # 74]. Ex. 28, at 27.

The hearing on August 20, 2002 was expressly adjourned to allow the Parole Division to produce documentation showing that the accounts at the Bank were still in existence at the time of the hearing. To that end, Mr. Green faxed a New York State subpoena *duces tecum* to the Bank, commanding it forthwith to provide verification that Mr. Rollins' accounts were active in 2001 and to provide information regarding a check that the Parole Division believed provided evidence of Mr. Rollins' alleged illegal income. Mr. Green informed the Bank employee that "we are in the middle of a Parole Revocation Hearing, and the judge has granted a one-day

---

4. Mr. Rollins testified as follows on August 20: "They did a thorough and complete financial investigation which included copies of all of my bank statements, they were given permission to take all my bank records." Def.'s Mot. for Summ. J. [doc. # 74], Ex. 28, at 26.

adjournment for us to produce this proof." Upon determining that the information sought by the Parole Division related to a pending criminal investigation, the Bank responded to the subpoena with three letters addressed to Mr. Green. The letters stated the following: the 819 Account was inactive in 2001; the 544 Account was active in 2001; and neither account contained information regarding the check in question.

The hearing resumed on August 22, and the Parole Division introduced as evidence only one of the letters that the Bank had provided in response to the subpoena. The letter from the Bank introduced at the hearing merely confirmed—accurately— that the 544 Account "was active" in 2001; the letter did not provide any details or financial information regarding the account. Though he had the opportunity to do so, Mr. Rollins did not object to the introduction of the letter. In fact, he gave the judge permission to contact the bank and "release information that will tell you the type of account it is." Def.'s Mot. for Summ. J. [doc. # 74], Ex. 6, at 60. At the conclusion of the hearing, the administrative law judge found numerous falsities in Mr. Rollins' questionnaire, only one of which related to the 544 Account. As a consequence, Mr. Rollins' parole was revoked, and he was incarcerated until January 2003. Later, after a final hearing, another administrative law judge concluded that the Parole Division had not proven that Mr. Rollins had lied on his financial questionnaire.

Mr. Rollins brought this action seeking damages from the Bank's disclosures to the Parole Division in response to the subpoena. Mr. Rollins seeks to recover emotional distress damages and legal fees associated with his incarceration, as well as damages arising from a business opportunity he claims to have lost while incarcer-

ated, from an eviction from his apartment for nonpayment of rent, from the termination of his relationship with his fiancee, and from the death of his mother while incarcerated. In all, Mr. Rollins seeks to recover damages of nearly $17 million from the Bank.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir.2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (alteration in original).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir.2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely

on allegations or denials." Fed.R.Civ.P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III.

Though the Bank asserts a number of grounds for summary judgment—including Mr. Rollins' failure to show that the Bank's letter was the cause of either his incarceration or any of his alleged damages [5]—the Court need only address the Bank's argument that it did not breach its contract with Mr. Rollins.

■ At the time he opened his accounts with the Bank, Mr. Rollins was provided a printed statement setting forth the terms of the agreement for each account. These statements form the basis of Mr. Rollins' breach of contract claim, since he does not rely on any verbal or other written agreement. The agreement regarding the 819 Account stated, in pertinent part as follows:

We will disclose information in order to verify the existence and conditions of your account for a third party, such as another financial institution, a credit bureau or commercial enterprise.

We will disclose information in order to comply with government agency rules or orders, court orders, subpoenas, summonses, warrants or in accordance with the requirements of state or local law.

We will disclose information in order to tell appropriate federal, state or local officials of suspected violations of criminal law involving your account . . .

Def.'s Mot. for Summ. J. [doc. # 74], Ex. 24, at 5–6. The contract that Mr. Rollins received when he opened the 544 Account contained similar language:

The confidentiality of your deposit account information is subject to state and federal law. However, to the extent the release and disclosure of your account information is not prohibited by law, you agree we may do so for proper business reasons. In addition, we may release and disclose your account information to third parties in response to any law, regulation, rule, or order, or to government authorities if we have reason to believe you have violated any law. You also agree that we may release and disclose your account information to our affiliates, subsidiaries, contractors and agents, including our auditors. Please see Article VIII, the Electronic Fund Transfers Disclosure Statement and Agreement for additional information on when we may disclose information about your account to others.

Def.'s Mot. for Summ. J. [doc. # 74], Ex. 3, at 9.

There are several reasons why the Bank's letters to the Parole Division did not violate these agreements. First, it is undisputed that the Bank sent the letters in response to a subpoena issued in the name of the Chairman of the Division of

---

5. Given that the administrative law judge revoked Mr. Rollins' parole on the basis of numerous alleged false statements in his financial questionnaire, only one of which related to his account with the Bank, it is questionable—at best—whether Mr. Rollins could prove that the Bank's disclosures were the proximate cause of the damages he claims to have sustained, or that the damages he seeks were reasonably foreseeable.

Parole by the Presiding Officer. There is likewise no dispute that the subpoena called for the information provided, that the Parole Division was conducting an investigation into Mr. Rollins, and that under New York law, parole officers, such as Mr. Green, are entitled to issue such subpoenas. *See* 9 N.Y.C.R.R. § 8000.6. The agreements between Mr. Rollins and the Bank clearly gave it authority to disclose information, in the case of the 819 Account, "to comply with government agency rules or orders, court orders, subpoenas, summonses, warrants or in accordance with the requirements of state or local law," and, in the case of the 544 Account, "to disclose your account information to third parties in response to any law, regulation, rule, or order."

Mr. Rollins complains that the subpoena was faxed rather than served and that the jurisdiction of the parole officials did not extend outside of New York. As an initial matter, the Court notes that Mr. Rollins was given a copy of the subpoena at the hearing and he certainly could have raised an objection to these alleged defects at that point, but he did not do so. More importantly, however, even assuming that Mr. Rollins is correct, under Connecticut law, banks are not required to challenge such deficiencies and they are permitted to waive such defects. *See Morgan v. Brown,* 219 Conn. 204, 212, 592 A.2d 925 (1991).[6]

■ Second, the agreements give the Bank authority to disclose information, in the case of the 819 Account, "in order to tell appropriate federal, state or local officials of suspected violations of criminal law involving your account," and gives the Bank authority to disclose account information, in the case of the 544 Account, "to government authorities if we have reason to believe you have violated any law." Both of these provisions provide ample authority for the Bank to have responded to the subpoena from New York law enforcement officials in connection with their investigation of Mr. Rollins. The Parole Division employees expressly told the Bank that Mr. Rollins was suspected of criminal activity and that the information requested was needed in connection with a parole revocation hearing that had been adjourned for precisely that purpose. Mr. Rollins contends that these provisions of his agreement with the Bank are limited to circumstances in which the Bank itself suspects criminal violations (as opposed to third-party law enforcement officials), but there is no basis in the language of the contracts to read such a proviso into it. *See, e.g., Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., Inc.,* 252 Conn. 479, 498, 746 A.2d 1277 (2000) ("A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.").

■ Third, clauses in the agreements also state that the Bank "will disclose information in order to verify the existence and conditions of your account for a third party" and that it reserves the right to disclose information regarding the account "for proper business reasons." These provisions provide further justification for the Bank's actions in response to the subpoena. The letter that was introduced at the parole revocation hearing did nothing

---

6. In support of his argument, Mr. Rollins relies upon a letter from a Bank employee that stated that since the Bank is not subject to the jurisdiction of the State of New York, it could not comply with New York subpoenas. However, no support was provided for that statement and Mr. Rollins does not provide citation to any authority for the proposition that the Bank could not recognize and respond to a validly issued New York subpoena or waive any defects in such a subpoena.

more than verify the existence of Mr. Rollins' account as active. And Mr. Rollins has never argued that the Bank lacked a legitimate "business reason" for complying with a subpoena issued by the a New York State law enforcement agency.

■ Fourth, and in any event, Mr. Rollins consented to the disclosure in several ways, and there can be no doubt that Mr. Rollins could consent to the Bank providing the information in question. *See* Conn. Gen.Stat. § 36a–42 (allowing disclosure of bank information where "the customer has authorized disclosure to such person"). Mr. Rollins concedes that while under supervision, he gave the Parole Division authority to obtain his financial information, and that is precisely what it did by faxing the subpoena to the Bank. More importantly, in connection with the hearing that led to his parole revocation, Mr. Rollins gave authority to the Parole Division and to the administrative law judge to obtain the information sought since he believed the information would show that his accounts were business not personal accounts. Indeed, when the Parole Division introduced the letter from the Bank regarding the 544 Account (the only letter introduced by the Parole Division), Mr.

Rollins' only concern was that the letter failed to state whether the account was a personal or a business account. He stated no objection to the disclosure or use of his Bank information *per se*. While he says that the Parole Division and the judge decided not to avail themselves of his consent and instead sought the information via a subpoena, it is difficult in the extreme to credit Mr. Rollins' argument that the Bank breached an alleged confidentiality provision that Mr. Rollins himself waived under oath before the administrative law judge.

■ In response, Mr. Rollins asserts a number of arguments, none of which has merit. Because the contract provided that the confidentiality of his account information would be subject to state and federal law,[7] Mr. Rollins argues that his contract with the Bank incorporated the provisions of Connecticut law, particularly Conn. Gen. Stat. § 36a–42,[8] on which he originally sued and which the Connecticut Supreme Court held did not provide a private cause of action. As an initial matter, there is some question as to whether under Connecticut law, contractual provisions of this sort could impose substantive statutory ob-

7. While Mr. Rollins suggests at several points that the disclosures violated "federal law," at no point does Mr. Rollins cite to any specific federal law that he believes was violated. Therefore, the Court has no occasion to consider whether the disclosures in question violated federal law.

8. Section 36a–42 provides as follows:
A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to (1) a certificate signed by the Commissioner of Administrative Services or the Commissioner of Social Services pursuant to the provisions of section 17b–137, (2) a lawful subpoena, sum-

mons, warrant or court order as provided in section 36a–43, (3) interrogatories by a judgment creditor or a demand by a levying officer as provided in sections 52–351b and 52–356a, (4) a certificate issued by a medical provider or its attorney under subsection (b) of section 17b–124, . . ., (5) a certificate signed by the Commissioner of Veterans' Affairs pursuant to section 27–117, or (6) the consent of an elderly person or the representative of such elderly person provided to a person, department, agency or commission pursuant to section 17b–454, provided the financial institution shall have no obligation to determine the capacity of such elderly person or the representative of such elderly person to provide such consent.

ligations enforceable by contract. *See Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 779, 783, 905 A.2d 623 (2006) ("[A]lthough we incorporate a law as if an express term of the contract to construe the scope or validity of an obligation already embraced within the terms of the contract, we do not incorporate the law to create a substantive obligation where none previously had existed."). Furthermore, the Connecticut Supreme Court's decision was clear that the legislature intended the statutes in question to be enforced administratively by the state's Banking Commissioner, not by private parties such as Mr. Rollins. *See Rollins*, 283 Conn. at 148, 925 A.2d 315 ("[T]o the extent there is evidence of legislative intent with respect to civil enforcement of §§ 36a–42 and 36a–43, it indicates that the legislature intended to vest jurisdiction over their enforcement in the commissioner of banking.").

In any event, the disclosures from the Bank do not violate the Connecticut law invoked by Mr. Rollins. The statute in question refers to disclosure of "financial information," which is defined in § 36a–41, and does not include any of the information disclosed in the Bank's letter. *See R.S. Silver Enter. Co., Inc. v. Pascarella*, No. FSTCV065002499S, 2007 WL 3121729, at *3 (Conn.Super.Ct. Oct. 2, 2007) (" '[F]inancial records' as defined in Section 36a–41(2) … include only banking records of signature authority, checks, drafts or money orders, or records of debit or credit to a deposit account."). Two of the letters merely confirmed whether Mr. Rollins' accounts were active in 2001; they disclosed no financial information at all. The third letter—which was not admitted at the parole revocation hearing and therefore could not have caused revocation of Mr. Rollins' parole—did relate to specific financial information but merely confirmed that the accounts did not have any information regarding the check in question.

The undisputed facts also show that the Bank acted in accordance with several explicit provisions of the parties' contract as well as state law, *see, e.g.*, Conn. Gen.Stat. § 36a–43(2) (disclosure permitted in response to a subpoena); Conn. Gen.Stat. § 36a–44 (disclosure permitted to "officials of federal, state or local governments upon suspected violations of criminal law"). Finally, while Mr. Rollins complains that he was not provided advance notice of the disclosure and the subpoena from the Bank, as he contends Connecticut law requires, there is no basis in the record to support his argument that he was "deprived … of any chance to challenge the substantive propriety of the disclosures." Mem. of Law in Opp'n. to Def.'s Mot. for Summ. J. [doc. # 75], at 5. For it is undisputed that he did in fact have advance notice that the Parole Division intended to seek account information from the Bank (indeed, he consented to it), and he saw both the subpoena (Exhibit 6 at the August 22 hearing) and the Bank's letter (Exhibit 4 at the August 22 hearing) before they were admitted into evidence at the parole revocation hearing. The administrative law judge thus gave Mr. Rollins the opportunity to challenge the propriety of the Parole Division's subpoena and the Bank's letter. Yet, he never voiced any objection to the subpoena or to use of the Bank's letter at the hearing (other than his concern that the letter failed to state whether his account was a business or a personal account). Therefore, even if the advance notice provisions of Connecticut law are intended to provide an account holder with the opportunity to object to the disclosure of account information, *see Rollins*, 283 Conn. at 144, 925 A.2d 315, Mr. Rollins had that opportunity. He simply chose not to avail himself of it.

In sum, the Court concludes that there are no genuine issues of material fact and

that the Bank is entitled to judgment as a matter of law on Mr. Rollins' breach of contract claim.

## IV.

For the reasons stated, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 74] and DENIES Plaintiff's Motion for Summary Judgment [doc. # 69]. **The Clerk is directed to enter judgment for Defendant on all of Plaintiff's claims and to close this file.**

IT IS SO ORDERED.