IN RE PETITION OF STATE'S ATTORNEY, COOK COUNTY, ILLINOIS

COTTER, C. J., BOGDANSKI, LONGO, SPEZIALE and PETERS, Js.

Argued June 7—decision released September 11, 1979

*H. B. Carey III,* with whom, on the brief, was *George B. Hastings,* for the appellant-appellee (Anthony R. Martin-Trigona).

*Ernest J. Diette, Jr.*, chief appellate counsel, with whom, on the brief, was *George D. Stoughton*, state's attorney, for the appellee-appellant (petitioner).

PER CURIAM. The dispositive issue in this case is whether a customer of a bank has the requisite standing to appear and contest the legal sufficiency of a subpoena duces tecum issued to a bank employee to produce records of the customer's transactions, under General Statutes § 54-22, Connecticut's enactment of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.[1]

Pursuant to § 54-22, a certificate signed by a judge of Cook County, Illinois was presented on August 10, 1978, to the Superior Court for the County of Hartford. In the certificate, the Illinois judge stated that an extended May, 1978 grand jury of Cook County, Illinois was investigating possible

---

[1] Section 54-22, in relevant part, reads: ". . . (b) SUMMONING WITNESSES IN THIS STATE TO TESTIFY IN ANOTHER STATE. If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies, under the seal of such court, that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution or grand jury investigation and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the judicial district in which such person is, such judge shall fix a time and place for a hearing and shall make an order directing the witness to appear at such time and place for such hearing. If, at such hearing, the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state and that the laws of such other state and the laws of any other state through which the witness may be required to pass by ordinary course of travel will give to him protection from arrest and from the service of civil or criminal process, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and

offenses of theft and forgery by Anthony R. Martin-Trigona, the appellant, regarding a check in the amount of $267,738 and the proceeds thereof. The purposes of the certificate were: (1) to compel the attendance and testimony of Kathy Ucci, customer services representative of The Connecticut Bank and Trust Company (hereinafter "CBT") before the Illinois grand jury; and (2) to compel Ucci to produce CBT records relating to the use of certain funds from the account of Martin-Trigona. Neither Ucci nor CBT challenged the order to attend. On August 10, 1978, after a hearing, the trial court entered an order directing Ucci to appear before the Illinois grand jury on August 24, 1978.

Martin-Trigona had not received prior notice of the August 10 hearing nor had he been sent a copy of the proposed subpoena to compel the attendance of Ucci at the grand jury. Martin-Trigona was first notified of the order and subpoena on August 19, and

testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. At any such hearing, the certificate shall be prima facie evidence of all the facts stated therein. If such certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in such state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for such hearing, and, being satisfied, at such hearing, of the desirability of such custody and delivery, of which desirability such certificate shall be prima facie proof, may, in lieu of issuing a subpoena or summons, order that such witness be forthwith taken into custody and delivered to an officer of the requesting state. If such witness, after being paid or tendered by an authorized person the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and five dollars each day that he is required to travel and attend as a witness, fails, without good cause, to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this state."

on August 22 he petitioned the court to open, vacate, or stay its order of August 10, 1978. Thereafter, a hearing was held in the trial court at which Martin-Trigona stated under oath that he had testified before the Illinois grand jury that he had endorsed with his own signature and deposited in his personal checking account in an Illinois bank a check in the amount of $267,738, which was payable to three persons, one of whom was himself as beneficiary of a trust. He further claimed to have testified to the grand jury that he used the proceeds from the above check for his own use and benefit and that $175,000 of these proceeds was transferred to his account in CBT in Hartford. No transcript of the grand jury proceeding was produced, however, to verify this testimony.

The trial court found that, assuming arguendo that Martin-Trigona *had* testified to the above matters before the grand jury, his CBT bank records were nevertheless material and necessary for the grand jury investigation. By order dated October 10, 1978, the court granted the petition and directed Ucci to appear and testify before the Illinois grand jury, and Martin-Trigona appealed therefrom.

On his appeal, Martin-Trigona claims that § 54-22 does not authorize a Connecticut court to issue a subpoena duces tecum, and that the trial court erred in its determination that the testimony and documents requested by the Illinois court were necessary and material to the Illinois grand jury investigation. On his cross-appeal, the Connecticut state's attorney[2] asserts that the trial court erred in finding that Martin-Trigona had standing to appear and contest the legal sufficiency of the subpoena directed to CBT.

[2] The Connecticut state's attorney's office acted on behalf of the Illinois state's attorney's office in this action.

Because the threshold issue of standing raised on the cross-appeal is dispositive of this case, we do not address the claims raised by Martin-Trigona on his appeal.

It is clear that the appellant, Martin-Trigona, as a bank customer, had no constitutional right to appear and contest the issuance of the subpoena for bank records regarding his account. *United States v. Miller*, 425 U.S. 435, 444-45, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976); see *California Bankers Assn. v. Shultz*, 416 U.S. 21, 53, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974). He contends, however, that by enacting General Statutes § 36-9*l*[3] the legislature created a *statutory* right in a bank customer to contest the sufficiency of a subpoena issued under § 54-22. We do not agree. Had the legislature, which acted after the United States Supreme Court decisions, supra,[4] intended to create such a right, it would have specifically written it into the statute. The legislature did not provide for a hearing procedure in § 36-9*l*, but provided only for service of a copy of the subpoena to the customer, subject to waiver by court order. "If the language of the statute is clear, it is assumed that the words themselves express the

---

[3] "[General Statutes] Sec. 36-9*l*. DISCLOSURE OF FINANCIAL RECORDS PURSUANT TO LAWFUL AUTHORITY. A financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if such subpoena, summons, warrant or court order or a certified copy thereof is also served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed, provided a court of competent jurisdiction, for good cause, may waive service of such subpoena, summons, warrant or court order, or certified copy thereof, upon such customer. No such financial institution shall be held civilly or criminally responsible for disclosure of financial records pursuant to a subpoena, summons, warrant or court order which on its face appears to have been issued upon lawful authority."

[4] Sections 36-9j et seq. were passed in 1977. Public Acts 1977, No. 77-294.

intent of the legislature; *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977); *Houston* v. *Warden,* supra, 251; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971)." *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972). The legislative intent is clear and unambiguous; thus there is no need for statutory construction or a review of the legislative history as urged in the opinion concurring in part and dissenting in part. Moreover, it is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms. *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507–508, 363 A.2d 1055 (1975); *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974); *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276 (1956). Therefore, we cannot infer the right to a hearing from the provision for notice in § 36-9*l,* as recommended by the opinion concurring in part and dissenting in part. We hold that Martin-Trigona lacked standing to contest the sufficiency of the subpoena. The effect of this decision is to uphold the order of the trial court directing Ucci to appear before the grand jury of Cook County, Illinois.

There is error on the cross-appeal of the petitioner, and the appeal of Martin-Trigona is dismissed.

In this opinion COTTER, C. J., LONGO and SPEZIALE, Js., concurred.

PETERS, J. (concurring in part and dissenting in part). Although I agree that the appellant, Martin-Trigona, has no constitutional right to appear and to contest the issuance of the subpoena of his bank records, I do not agree with the conclusion of the majority that this lack of standing is unaffected by the enactment of General Statutes § 36-9l.

The legislative history of § 36-9l indicates that the statute was intended to provide bank customers an opportunity to challenge, in court, the propriety of disclosure of their bank records. The statute was passed after and, at least in part, in response to the United States Supreme Court cases cited in the majority opinion. Those cases addressed only a customer's rights under the fourth amendment of the United States constitution, and did not purport to preclude state legislation to govern the legal process by which subpoenas of bank records should be implemented. See *United States* v. *Miller,* 425 U.S. 435, 445-46, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976). Cf. *Valley Bank of Nevada* v. *Superior Court,* 15 Cal. 3d 652, 542 P.2d 977 (1975); *Burrows* v. *Superior Court,* 13 Cal. 3d 238, 529 P.2d 590 (1974). At the hearings concerning what has become § 36-9l, the bill's chief sponsor testified that the bill's provision requiring ten days' notice before the disclosure of bank records was purposely designed to enable a customer to contest a subpoena in court, if he so chose. 2 H.R. Proc., pt. 7, 1977 Sess., p. 2635.[1]

---

[1] Although not admissible in evidence, there was also testimony in support of the bill before the Banks Committee which agreed with this interpretation: counsel for the Connecticut Bankers Association recorded his understanding that a customer would be entitled to a court hearing on why certain banking records should not be disclosed. Hearings before the Joint Standing Committee on Banks, Conn. Gen. Assembly, 1977 Sess., p. 444.

While legislative history is not dispositive, it does shed useful light on the language actually used by the legislature to effectuate its purpose. The text of § 36-9*l* is clear and explicit that a customer is entitled to notice ten days prior to disclosure of his financial records by a financial institution. While the statute does not expressly authorize the right to participate in a hearing concerning the records to be subpoenaed, such a right is a logical and necessary inference from the right to notice. A right to notice implies a right to act upon receipt of notice, and the normal consequence of notice is an opportunity to be heard. *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693, 137 A.2d 542 (1957); *Winslow* v. *Zoning Board,* 143 Conn. 381, 389, 122 A.2d 789 (1956). Cf. *Kron* v. *Thelen,* 178 Conn. 189, 193, 423 A.2d 857 (1979). The proposition that the statute confers affirmative rights upon the customer is consistent also with the statute's final sentence, which provides banks with immunity for compliance with a subpoena. Against what identifiable risks were banks provided with immunity? As immunity is limited to wrongful *compliance* with a facially lawful order of subpoena, no one other than the bank's customer could possibly be aggrieved. That aggrievement might not, however, be actionable absent § 36-9*l*, since contracts of deposit between customer and bank are not likely to furnish a sufficient basis for an affirmative cause of action against the bank. If § 36-9*l* does, however, entitle a customer to prevent disclosure of his bank records until he has had an opportunity to be heard, this right might well manifest itself in a claim against the bank for premature disclosure, and this claim is one against

which a bank might legitimately want immunity since the bank itself is not the issuer of the statutory notice.

It is true that § 36-9*l* can be read to give effect to its notice provision without inferring a right to be heard. On this alternate reading, the statute affords notice to the customer so that the customer can alert the bank to interpose defenses that the bank itself might otherwise not raise. Such a reading leaves the notice requirement intact and relevant, but makes it only marginally effective. This very case illustrates the problem, for the notice required by the statute was not given in timely fashion. As in *United States* v. *Miller,* supra, 443 n.5, failure to notify would simply be an unattractive "neglect without legal consequences" if the statute is read too narrowly. Without a right to participate in a hearing, there is no effective sanction if the statute is ignored. Even apart from the statute, a bank has always had the option of consulting its customer before the release of bank records relating to his account. In order to give the statute the effect that was intended, I believe it must be read to require both notice and an opportunity for a hearing before a court.

I would therefore hold that the appellant has standing by virtue of § 36-9*l*. I concur in the court's ultimate judgment because, on the merits, I am inclined to agree with the thoughtful opinion of the trial judge.

In this opinion Bogdanski, J., concurred.