ROGER MORGAN *v.* HOWARD B. BROWN, JR.,
COMMISSIONER OF BANKING

PAUL LEGASSEY *v.* HOWARD B. BROWN, JR.,
COMMISSIONER OF BANKING
(14228)

PETERS, C. J., SHEA, CALLAHAN, BORDEN and F. X. HENNESSY, Js.

Argued April 30—decision released June 18, 1991

*William J. Prensky,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Rodger C. Boe,* for the appellees (plaintiffs).

PETERS, C. J. The principal issue in this consolidated appeal is whether General Statutes § 36-9*l* (b)[1] confers standing upon a bank customer to challenge alleged procedural deficiencies in the manner in which investigative subpoenas for his bank records were served upon his bank. The plaintiffs, Roger Morgan and Paul Legassey (customers), filed applications to quash four administrative subpoenas duces tecum that the defendant, Howard B. Brown, Jr., commissioner of banking (commissioner), had directed to be served, pursuant to General Statutes §§ 36-9*l* (a) and 36-495 (a), on banks

---

[1] General Statutes § 36-9*l* provides in relevant part: "(a) Except as provided in section 36-9m, a financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if the party seeking the records causes such subpoena, summons, warrant or court order or a certified copy thereof to be served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed, provided a court of competent jurisdiction, for good cause, may waive service of such subpoena, summons, warrant or court order, or certified copy thereof, upon such customer. . . .

"(b) A customer of a financial institution shall have standing to challenge a subpoena of his financial records, by filing an application or motion to quash in a court of competent jurisdiction within the ten-day notice period required by subsection (a) of this section. Upon the filing of such application or motion by the customer, and service of such application or motion upon the financial institution and the person issuing the subpoena, production of the records shall be stayed, without liability to the financial institution, until the court holds a hearing on the motion or application and an order is entered sustaining, modifying or quashing the subpoena. . . ."

in which the customers maintained accounts. The trial court granted the applications to quash, in some instances because of the state's failure to pay witness fees to the banks, and in others because of the sheriff's choice of an inappropriate person to serve within the bank. The commissioner appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. We reverse.

The commissioner caused the administrative subpoenas in this case to be issued in the course of his investigation into the sale of units in four real estate limited partnerships. His investigation was intended to uncover possible violations of the Connecticut Uniform Securities Act; General Statutes §§ 36-470 through 36-502; which includes the sale of such units within its jurisdiction. The customers have not challenged the commissioner's regulatory authority to undertake this investigation or to issue the relevant subpoenas. See General Statutes § 36-495.[2]

The commissioner's investigation led him to cause four administrative subpoenas to be issued on April 24, 1990. Subpoenas for the financial records of the plaintiff Morgan were served on Northeast Savings Bank, and, with respect to the plaintiff Legassey, on the Connecticut Bank and Trust Company, the Bank of Bos-

---

[2] General Statutes § 36-495 provides in relevant part: "(a) The commissioner, in his discretion, may, subject to the provisions of chapter 3: (1) Make such public or private investigations within or outside of this state as he deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any regulation or order hereunder, or to aid in the enforcement of this chapter or in the prescribing of rules and forms hereunder . . . .

"(b) For the purpose of any investigation or proceeding under this chapter, the commissioner or any officer designated by him may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements or other documents or records which the commissioner deems relevant or material to the inquiry. . . ."

ton, and the Glastonbury Bank and Trust Company. In accordance with § 36-9*l* (a), the commissioner served the customers with certified copies of the bank subpoenas at least ten days prior to the production date stated in the subpoenas. The customers have not challenged the propriety of the commissioner's conduct with respect to their own service except for their renewal of a claim, rejected by the trial court, that each of them was entitled to be paid witness fees.

The trial court found that the commissioner's service of the subpoenas on the banks was defective in two respects. The court found that, in executing service, the commissioner failed to tender a witness fee to the Northeast Savings Bank, the Connecticut Bank and Trust Company, or the Glastonbury Bank and Trust Company, and concluded that this failure violated the requirements of General Statutes § 52-260.[3] The court further found that, in each case, service had been accomplished by in-hand personal service. The persons so served were: for the Northeast Savings Bank, an employee holding the position of staff counsel; for the Connecticut Bank and Trust Company, the bank's assistant secretary; for the Bank of Boston, the branch assistant; and for the Glastonbury Bank and Trust Company, its senior vice president. The court concluded that effecting service on a person with the title of staff counsel or branch assistant violated the requirements of General Statutes § 52-57 (c).[4] The court concluded,

[3] General Statutes § 52-260 provides in relevant part: "(a) The fees of a witness for attendance before any court, the general assembly or any committee thereof, when summoned by the state, or before any legal authority, shall be fifty cents a day, and for travel to the place of trial, ten cents a mile. . . . The clerk of the superior court, upon request, shall, on the day of attendance, pay the fee of any witness summoned by the state to appear before the court. In criminal trials, no fees may be allowed to bystanders called as witnesses. . . ."

[4] General Statutes § 52-57 provides in relevant part: "(c) In actions against a private corporation, service of process shall be made either upon the presi-

therefore, that each of the subpoenas was defectively served in one or more respects.

In the absence of timely objection by the parties served to such alleged procedural defects, the ordinary rule is that the defects have been waived. See Practice Book § 144;[5] *Bridgeport* v. *Debek,* 210 Conn. 175, 180, 554 A.2d 728 (1989); *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 53, 459 A.2d 503 (1983). The trial court ruled, however, that a different rule obtained in this case because § 36-9*l* (b) conferred standing on the customers to challenge the validity of the subpoenas. The trial court therefore granted the customers' applications to quash all four subpoenas.

The commissioner's appeal raises three issues of statutory construction: (1) do the customers have standing, under § 36-9*l* (b), to challenge the subpoenas because of procedural irregularities in their service on their banks; (2) in light of the state's sovereign immunity, does § 52-260 include state investigatory subpoenas within its requirements for the payment of witness fees; and (3) in light of the past practices of the respective banks, does § 52-57 (c) invalidate the service of process of the subpoenas? The customers urge us to consider, as alternate grounds for affirming the judgment of the trial court, that the subpoenas should have been quashed because (1) the customers them-

dent, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. . . ."

[5] "[Practice Book] Sec. 144. WAIVER BASED ON CERTAIN GROUNDS

"Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Secs. 112 and 113 and within the time provided by Sec. 142."

selves should have been paid witness fees, and (2) letters accompanying the subpoenas improperly attempted to induce the banks to deliver the requested documents before the expiration of the ten day waiting period specified in § 36-9*l* (a). We agree with the commissioner that the customers lack standing to raise the issues upon which the trial court relied in quashing the subpoenas, and that the trial court correctly ruled against the customers on their alternate grounds for affirmance.

I

The dispositive issue on the commissioner's appeal is the scope of the standing conferred upon a bank customer by § 36-9*l* (b), which provides that "[a] customer of a financial institution shall have standing to challenge a subpoena of his financial records . . . ." Did the legislature thereby intend to confer standing on a bank customer for the specific purpose of permitting him to challenge disclosure of the substantive contents of his financial records? Did the legislature further intend to confer standing on a bank customer to challenge, as a third party surrogate, the procedures by which service of process was effected on the financial institution in which he has his bank account? The text of the statute provides no clear answer.

Three propositions frame our analysis of the scope of the standing that § 36-9*l* (b) confers on bank customers. First, a bank customer has "no constitutional right to appear and contest the issuance of [a] subpoena for bank records regarding his account. *United States* v. *Miller,* 425 U.S. 435, 444–45, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976); see *California Banks Assn.* v. *Schultz,* 416 U.S. 21, 53, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974)." *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 106, 425 A.2d 588 (1979). Second, a bank customer has no statutory right, apart from § 36-9*l* (b),

to raise procedural defects relating to the service of process on his bank unless those defects adversely implicate a court's subject matter jurisdiction. *Bridgeport* v. *Debek,* supra, 179–80. Third, § 36-9*l* (a), which entitles a bank customer to notice of investigatory inquiries into his bank records, was held by this court not to confer standing to challenge the legal sufficiency of a subpoena duces tecum. *In re Petition of State's Attorney, Cook County, Illinois,* supra, 106. In that case, which arose out of a subpoena duces tecum seeking Connecticut bank records for an investigation being conducted by an Illinois grand jury, the customer sought to question both the general authority of a Connecticut court to issue a subpoena for an Illinois inquiry, and the specific materiality of the information that Illinois was trying to subpoena. A separate opinion, concurring in part and dissenting in part, concluded that the purpose of § 36-9*l* (a) and its legislative history required a contrary finding as to standing but not as to the merits of the controversy. Id., 108–10.

When the legislature revisited this agenda to enact § 36-9*l* (b) in 1988, it left virtually no paper trail of its intentions. The recorded legislative history reveals no substantive discussion on the floor of either house of the General Assembly. The bill's Senate proponent, Senator Stephen C. Casey, reporting favorable committee action and requesting consent status for the bill's enactment, merely explained: "Mr. President, this bill simply gives a bank customer legal standing to challenge a subpoena of his bank records in certain instances." 31 S. Proc., Pt. 6, 1988 Sess., p. 2225. At the committee level, however, proceedings before the Banks Committee reveal that the bill was intended to overturn the ruling on standing in *In re Petition of State's Attorney, Cook County, Illinois* and to spell out the procedural rights that had been judicially viewed

to have been lacking earlier. But see *In re Petition of State's Attorney, Cook County, Illinois,* supra, 108 (*Peters, J.,* concurring and dissenting); Conn. Joint Standing Committee Hearings, Banks, 1988 Sess., pp. 60–62, 70–82.[6]

"Where an act does not contain an express statement of its public purpose, we may consider the entire act as well as its legislative history to ascertain such a purpose." *Carofano* v. *Bridgeport,* 196 Conn. 623, 634, 495 A.2d 1011 (1985). Viewing § 36-9*l* in its entirety, we are persuaded that § 36-9*l* (b) was enacted to afford a bank customer the opportunity to contest the validity of those inquiries about his bank records for which he had been entitled to receive notice under § 36-9*l* (a) as originally enacted. Armed with notice under § 36-9*l* (a) and a right to a hearing under § 36-9*l* (b), a customer has standing to challenge the substantive propriety of the disclosure of his records, on grounds such as those at issue in *In re Petition of State's Attorney, Cook County, Illinois*: that there is no authority for the issuance of the subpoena; or that the customer's financial records are immaterial to the investigation. To protect access to these substantive rights, a customer undoubtedly also has standing to challenge the timeliness and the manner of service of his own § 36-9*l* (a) notice. See *State* v. *Iasevoli,* 188 Conn. 325, 333–34, 449 A.2d 996 (1982).

Nothing in the text of § 36-9*l* (b) or in its legislative history suggests, however, that the legislature intended also to confer standing on a bank customer to challenge

---

[6] Although this court usually looks to legislative history in the form of debates that occur on the floor of the House of Representatives or the Senate, when those debates have been unilluminating, we have occasionally referred to committee testimony that is particularly probative of legislative purpose. *Mahoney* v. *Lensink,* 213 Conn. 548, 559 n.15, 569 A.2d 518 (1990).

procedural irregularities in the manner in which an administrative subpoena has been served on the financial institution in which he has his account. To the contrary, Senator Casey's statement that the statute confers upon a bank customer "legal standing to challenge a subpoena of his bank records *in certain instances*"; (emphasis added) 31 S. Proc., supra; confirms a construction that such standing is not unlimited.[7] In light of the legislature's articulated preference for the waivability of procedural shortcomings in administrative appeals, manifested the same year that § 36-9*l* (b) was enacted by adoption of a revised Uniform Administrative Procedure Act; see, e.g., General Statutes § 4-183 (c), (d) and (e); we doubt that the legislature intended to authorize bank customers to enforce procedural rights that their banks are content to waive.

On the commissioner's appeal, we conclude, therefore, that § 36-9*l* (b) confers no standing upon bank customers to contest the procedures by which service of process has been made on their banks. The banks having waived the alleged procedural deficiencies at issue in this case, the commissioner's subpoenas should not have been quashed on these grounds.

---

[7] In 1989, the legislature amended General Statutes § 36-9*l* (a) by adding a proviso incorporating the provisions of General Statutes § 36-9m to exempt certain bank records subject to criminal investigative procedures from the § 36-9*l* (a) ten-day notice requirement. The legislative discussion of this amendment serves to emphasize that § 36-9*l* in its entirety was intended to address the propriety of certain disclosures rather than the manner in which a request for disclosure might be initiated. 32 H.R. Proc., Pt. 20, 1989 Sess., p. 6916; 32 S. Proc., Pt. 10, 1989 Sess., p. 3499. Senator Stephen C. Casey stated: "Current law prohibits financial institutions from disclosing a customer's financial records pursuant to a search warrant unless the party seeking the records serves the warrant on the customer ten days in advance. This bill simply eliminates the requirement that the customer be served a copy of the warrant issued by superior court judge." 32 S. Proc., Pt. 10, 1989 Sess., p. 3499.

## II

The customers have raised two alternative grounds upon which the trial court might have quashed the subpoenas. They maintain that (1) the commissioner was obligated, in serving each of them pursuant to § 36-9*l* (a) with a "subpoena . . . or certified copy thereof," to pay them witness fees; and (2) the commissioner violated General Statutes § 36-9n (b)[8] by wrongfully attempting to induce premature disclosure of the customers' financial records. We agree with the trial court's rejection of these claims.

With respect to the customers' first claim, the trial court found that the customers had been properly served, with in-hand service, but had not been tendered witness fees. The statute prescribing the payment of witness fees, § 52-260 (a),[9] identifies the purpose of the fees as payment for the costs of attendance and travel. At the trial court hearing, the customers identified no other reason for the payment of such fees, and did not contest the court's conclusion that the notice served on the customers did not require their attendance at, or travel to, any designated hearing site. They have not further elaborated on their claim in their appellate brief. We conclude, therefore, that the customers have established neither a factual nor a legal predicate for their claimed entitlement to witness fees.

The customers claim, in the alternative, that the subpoenas should be quashed because the commissioner attempted, albeit unsuccessfully, to induce the banks to disclose the customers' financial records prematurely

---

[8] General Statutes § 36-9n provides in relevant part: "(b) Any person who knowingly and wilfully induces or attempts to induce any officer or employee of a financial institution to disclose financial records in violation of sections 36-9j to 36-9m, inclusive, shall be guilty of a class C misdemeanor."

[9] For the text of General Statutes § 52-260 (a), see footnote 3, supra.

and thus to undermine the customers' statutory rights under § 36-9*l* to a ten day period to contest the legitimacy of the disclosures. The factual source of this claim is the commissioner's inclusion, in his covering letter to the various banks, of a sentence stating: "If the documents and records described in the subpoena are delivered to this department prior to the date specified in the subpoena, [the bank] will be advised subsequent to such production if a personal appearance to testify is required." This sentence in the commissioner's letter is the basis for the customers' claims that the commissioner had committed a misdemeanor under § 36-9n (b) and that such a criminal offense furnished good cause for quashing the subpoenas he had issued.

Like the trial court, we are unpersuaded that the commissioner's letter had the draconian consequences that the customers attribute to it. The trial court was entitled to determine, in light of the circumstances before it, that the significant papers served on the banks were the subpoenas themselves and not the covering letters. In each case the subpoenas, although dated and served on April 24, 1990, postponed the date for production of the documents sought by the commissioner until May 30, 1990, well after the expiration of the ten day waiting period mandated by § 36-9*l* (a). Viewing the record as a whole and noting that the disputed records had not yet been disclosed, the trial court did not find that the commissioner had engaged in wilful subversion of the customers' rights to nondisclosure of their financial records. In the absence of such a finding, the customers have not established any basis for quashing the subpoenas issued by the commissioner.

The judgments are reversed and the cases are remanded with direction to dismiss the applications to quash the four administrative subpoenas issued by the commissioner.

In this opinion the other justices concurred.