## RODNEY ROLLINS *v.* PEOPLE'S BANK CORPORATION
### (SC 17671)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 16—officially released July 10, 2007

*Steven A. Hoffner*, pro hac vice, with whom was *Robert A. Richardson*, for the appellant (plaintiff).

*William J. Wenzel*, for the appellee (defendant).

*Richard Blumenthal*, attorney general, and *Mark F. Kohler*, assistant attorney general, filed a brief for Howard F. Pitkin, banking commissioner of the state of Connecticut, as amicus curiae.

*Opinion*

PALMER, J. The dispositive issue in this case, which comes to us upon our acceptance of three certified questions from the United States District Court for the District of Connecticut pursuant to General Statutes § 51-199b (d),[1] is whether a private right of action is implied under Connecticut law in favor of a customer and against a financial institution for disclosure of a customer's financial records in violation of General

---

[1] General Statutes § 51-199b (d) provides in relevant part: "The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

Statutes § 36a-42[2] or § 36a-43.[3] We answer that question in the negative.

[2] General Statutes § 36a-42 provides: "A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to (1) a certificate signed by the Commissioner of Administrative Services or the Commissioner of Social Services pursuant to the provisions of section 17b-137, (2) a lawful subpoena, summons, warrant or court order as provided in section 36a-43, (3) interrogatories by a judgment creditor or a demand by a levying officer as provided in sections 52-351b and 52-356a, (4) a certificate issued by a medical provider or its attorney under subsection (b) of section 17b-124, provided nothing in this subsection shall require the provider or its attorney to furnish to the financial institution any application for medical assistance filed pursuant to an agreement with the IV-D agency under subsection (c) of section 17b-137, (5) a certificate signed by the Commissioner of Veterans' Affairs pursuant to section 27-117, or (6) the consent of an elderly person or the representative of such elderly person provided to a person, department, agency or commission pursuant to section 17b-454, provided the financial institution shall have no obligation to determine the capacity of such elderly person or the representative of such elderly person to provide such consent."

Although § 36a-42 was amended in 2001 and 2003; see Public Acts, Spec. Sess., June, 2003, No. 03-3, § 97; Public Acts 2001, Nos. 01-10, § 1, and 01-209, § 4; those amendments have no bearing on the issues raised in connection with the certified questions. In the interest of simplicity, we refer to the current revision of § 36a-42.

[3] General Statutes § 36a-43 provides: "(a) Except as provided in section 36a-44, a financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if the party seeking the records causes such subpoena, summons, warrant or court order or a certified copy thereof to be served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed, provided a court of competent jurisdiction, for good cause, may waive service of such subpoena, summons, warrant or court order, or certified copy thereof, upon such customer. If such subpoena was issued by the Commissioner of Administrative Services or the Commissioner of Social Services pursuant to section 17b-137, 17b-452 or 17b-454, service of such subpoena upon the customer shall not be required.

"(b) A customer of a financial institution shall have standing to challenge a subpoena of the customer's financial records, by filing an application or motion to quash in a court of competent jurisdiction. Upon the filing of such application or motion by the customer, and service of such application or motion upon the financial institution and the person issuing the subpoena, production of the records shall be stayed, without liability to the financial institution, until the court holds a hearing on the motion or application and an order is entered sustaining, modifying or quashing the subpoena.

"(c) A financial institution shall disclose financial records pursuant to a certificate, signed by the Commissioner of Administrative Services or the

The record certified by the United States District Court reveals the following relevant facts and procedural history. At all times relevant to the case, the plaintiff, Rodney Rollins, a resident of New York, maintained a savings and a checking account with the defendant, People's Bank Corporation, a Connecticut state chartered bank. Sometime prior to October, 2000, the plaintiff was released on parole after serving a term of imprisonment for a crime that he had committed in the state of New York. Between October, 2000, and January, 2003, officers of the New York state division of parole (division of parole) issued subpoenas to the defendant directing it to disclose certain information about the plaintiff's bank accounts. In response to the subpoenas, the defendant provided the division of parole with information about the plaintiff's accounts, including the plaintiff's application information, bank statements and canceled checks. According to the plaintiff, he did not receive notice of the subpoenas as required by § 36a-43. In reliance on the financial information that the defendant had disclosed pursuant to the subpoenas, the division of parole sought to revoke the plaintiff's parole, and the plaintiff was incarcerated immediately.[4] Ulti-

Commissioner of Social Services in accordance with the provisions of section 36a-42, or pursuant to an agreement with the IV-D agency under subsection (c) of section 17b-137.

"(d) No such financial institution shall be held civilly or criminally responsible for disclosure of financial records pursuant to a certificate, subpoena, summons, warrant or court order which on its face appears to have been issued upon lawful authority."

Although § 36a-43 was amended in 2001 and 2005; see Public Acts 2005, No. 05-139, § 1; Public Acts 2001, No. 01-209, § 5; those amendments have no bearing on the issues raised in connection with the certified questions. In the interest of simplicity, we refer to the current revision of § 36a-43.

[4] The plaintiff alleged in the complaint that he filed in federal court that, on the basis of "the banking records provided by [the] [d]efendant, the New York [s]tate [p]arole officials wrongfully accused [the] plaintiff of failing to accurately disclose his financial situation, and/or misleading parole officials about his assets, and the source of his income." The plaintiff further alleged that, "[i]n reliance on these records, the [p]arole officer revoked [the] plaintiff's parole. As a result, [the] plaintiff was incarcerated for approximately six . . . months. He was released from jail only when a [c]ourt concluded

mately, however, the division of parole was unable to meet its burden of establishing that the plaintiff had violated his parole, and the plaintiff was released from custody.

The plaintiff subsequently commenced a diversity action against the defendant in the United States District Court for the District of Connecticut, seeking compensatory and punitive damages for, inter alia, the defendant's alleged violation of § 36a-43. Specifically, the plaintiff alleged that the defendant had violated § 36a-43 (a) by complying with the subpoenas without first ascertaining that the plaintiff had been served notice of those subpoenas at least ten days prior to the disclosure of the information requested therein.[5] Thereafter, the parties filed a joint petition for certification to this court, which the District Court granted. We then accepted the following three questions of law certified by the District Court: (1) "Is a private right of action implied under Connecticut law in favor of a customer and against a financial institution for disclosure of a customer's financial records in violation of . . . [§] 36a-42 or [§] 36a-43?"[6] (2) "Does the exception contained in [General Statutes] § 36a-44 (7)[7] for 'disclo-

that his financial disclosures were accurate and that he had never misled New York [s]tate officials."

[5] The plaintiff also raised several other claims against the defendant, all of which arose out of the same alleged conduct that forms the basis of the plaintiff's statutory claim. Those other claims, some of which the District Court has dismissed, are not relevant to our resolution of the issues presented by the certified questions.

[6] Although the plaintiff alleges a private cause of action under § 36a-43, the parties' joint petition for certification to this court characterizes the source of the plaintiff's cause of action as either § 36a-42 or § 36a-43, and the District Court phrased the first certified question in accordance with that characterization.

[7] General Statutes § 36a-44 provides in relevant part: "No provision of sections 36a-41 to 36a-45, inclusive, shall be construed to prohibit . . . (7) disclosures to appropriate officials of federal, state or local governments upon suspected violations of the criminal law . . . ."

Although § 36a-44 was amended in 2005; see Public Acts 2005, No. 05-62, § 1; the amendment has no bearing on the issues raised in connection with

sure to appropriate officials of federal, state, or local governments upon suspected violations of the criminal law' apply when such suspicion originated in the law enforcement agency, as opposed to the [f]inancial [i]nstitution?" (3) "If questions [1 and 2] are both answered in the affirmative, do the requirements of . . . [§] 36a-43 still apply?" Our negative answer to the first question renders it unnecessary for us to consider the second and third certified questions.

Whether a statute creates an implied private right of action is a matter of statutory construction. When, as in the present case, a statutory provision is silent with respect to whether it creates a private remedy, our analysis is not limited by General Statutes § 1-2z, which provides that the meaning of statutes shall be ascertained from only their text and their relationship to other statutes if those sources reveal an unambiguous meaning that is not absurd or unworkable. Cf. *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, 277 Conn. 238, 246–48, 890 A.2d 522 (2006). In addition to the words of the statute itself, "we look to . . . the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 372, 880 A.2d 138 (2005).

"[A]s the party seeking to invoke an implied right of action, the [plaintiff bears] the burden of demonstrating that such an action is created implicitly in the statute." *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 246. "In determining whether a private remedy is implicit in a statute not expressly

the certified questions. In the interest of simplicity, we refer to the current revision of § 36a-44.

providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). Furthermore, the plaintiff also "must demonstrate . . . in applying [this] three part test . . . [that] no factor weighs against affording an implied right of action and [that] the balance of factors weighs in [his] favor." (Citation omitted.) *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 246–47.

"In examining these three factors, each is not necessarily entitled to equal weight. Clearly, these factors overlap to some extent with each other, in that the ultimate question is whether there is sufficient evidence that the legislature intended to authorize [the plaintiff] to bring a private cause of action despite having failed expressly to provide for one. . . . Therefore, although the [plaintiff] must meet a threshold showing that none of the three factors weighs against recognizing a private right of action, stronger evidence in favor of one factor may form the lens through which we determine whether the [plaintiff] satisf[ies] the other factors. Thus, the amount and persuasiveness of evidence supporting each factor may vary, and the court must consider all evidence that could bear on each factor. It bears repeating, however, that the [plaintiff] must meet the threshold showing that none of the three factors weighs against recognizing a private right of action." (Citation omitted.) Id., 247–48.

With these principles in mind, we begin our analysis with the language of General Statutes § 36a-42, which provides in relevant part: "A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to . . . (2) a lawful subpoena, summons, warrant or court order as provided in section 36a-43 . . . ." General Statutes § 36a-43 (a), in turn, provides in relevant part: "Except as provided in section 36a-44, a financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if the party seeking the records causes such subpoena, summons, warrant or court order or a certified copy thereof to be served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed . . . ." Subsection (b) of General Statutes § 36a-43 provides: "A customer of a financial institution shall have standing to challenge a subpoena of the customer's financial records, by filing an application or motion to quash in a court of competent jurisdiction. Upon the filing of such application or motion by the customer, and service of such application or motion upon the financial institution and the person issuing the subpoena, production of the records shall be stayed, without liability to the financial institution, until the court holds a hearing on the motion or application and an order is entered sustaining, modifying or quashing the subpoena."

There is no question that the plaintiff, as a customer of the defendant, belongs to the class of persons for whose benefit §§ 36a-42 and 36a-43 were enacted. As former Justice Ellen A. Peters explained in her concurring and dissenting opinion in *In re Petition of State's Attorney, Cook County, Illinois*, 179 Conn. 102, 425

A.2d 588 (1979), "[t]he legislative history of [General Statutes (Rev. to 1979)] § 36-9*l* [which subsequently was transferred to § 36a-43][8] indicates that the statute was intended to provide bank customers an opportunity to challenge, in court, the propriety of disclosure of their bank records. The statute was passed after and, at least in part, in response to . . . [*United States* v. *Miller*, 425 U.S. 435, 444–45, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976), in which the United States Supreme Court held that a bank customer has no constitutional right to contest the issuance of a subpoena directing a bank to disclose information pertaining to his or her bank accounts]. . . . At the [legislative] hearings concerning [the proposed legislation that is now codified at § 36a-43], the . . . chief sponsor [of the legislation] testified that the . . . provision requiring ten days' notice before the disclosure of bank records was purposely designed to enable a customer to contest a subpoena in court, if he so chose. [20] H.R. Proc., Pt. 7, 1977 Sess., p. 2635." (Citations omitted.) *In re Petition of State's Attorney, Cook County, Illinois*, supra, 108 (*Peters, J.,* concurring in part and dissenting in part); see also 31 S. Proc., Pt. 6, 1977 Sess., pp. 2225–26, remarks of Senator Steven C. Casey ("[§ 36a-43] simply gives a bank customer legal standing to challenge a subpoena of his bank records in certain instances"); 20 H.R. Proc., supra, p. 2636, remarks of Representative William J. Scully, Jr. ("[Section 36a-42] is purely and simply a consumer protection measure. . . . [I]t affords customers confidentiality [in] the treatment of their records by financial institutions."). Accordingly, the plaintiff has satisfied the first prong of the three part *Napoletano* test.

We turn, therefore, to the second prong of that test, which requires us to determine whether the pertinent

---

[8] Section 36a-43 formerly had been codified at General Statutes § 36-9*l*. That section was transferred to § 36a-43 in 1995.

statutory provisions indicate a legislative intent either to create or to deny a private right of action under § 36a-42 or § 36a-43. This is not the first time we have considered whether a private remedy is implied under § 36a-43. In *In re Petition of State's Attorney, Cook County, Illinois*, supra, 179 Conn. 106–107, we held that the legislature did not intend to confer standing on a bank customer to contest the legal sufficiency of a subpoena duces tecum issued pursuant to General Statutes (Rev. to 1979) § 36-9*l* (now codified as amended at § 36a-43). That case, however, was decided pursuant to a previous version of the statute that, unlike the present statute, did not expressly confer standing on a bank customer to challenge a subpoena of his bank records. Instead, the original statute provided in relevant part: "A financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if such subpoena, summons, warrant or court order . . . is also served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed . . . ." General Statutes (Rev. to 1979) § 36-9*l*.[9] In a short per curiam decision, the majority rejected the bank customer's contention that, in enacting General Statutes (Rev. to 1979) § 36-9*l*, the legislature had intended to afford a bank customer a statutory right to challenge the legal sufficiency of a subpoena. The court concluded, rather, that "[h]ad the legislature, which acted after the United States Supreme Court decisions [in *United States* v. *Miller*, supra, 425 U.S. 444–45, and *California Bankers Assn.* v. *Shultz*, 416 U.S. 21, 53, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974)], intended to create such a right, it would have specifically written it into the statute." *In re Petition of State's*

---

[9] General Statutes (Rev. to 1979) § 36-9*l* did not contain a provision such as that contained in § 36a-43 (b), which expressly confers standing on the customer to challenge the subpoena.

*Attorney, Cook County, Illinois,* supra, 106. As we indicated previously, Justice Peters disagreed with the majority on this point. In her concurring and dissenting opinion, she stated that "[t]he text of [the statute] is clear and explicit that a customer is entitled to notice ten days prior to disclosure of his financial records by a financial institution. While the statute does not expressly authorize the right to participate in a hearing concerning the records to be subpoenaed, such a right is a logical and necessary inference from the right to notice." Id., 109 (*Peters, J.,* concurring in part and dissenting in part).

Several years later, in response to this court's holding in *In re Petition of State's Attorney, Cook County, Illinois,* the legislature enacted Public Acts 1988, No. 88-251 (P.A. 88-251), which amended General Statutes (Rev. to 1987) § 36-9*l* by affording a bank customer standing to challenge a subpoena issued pursuant to the statute. See *Morgan* v. *Brown,* 219 Conn. 204, 210–11, 592 A.2d 925 (1991) ("[P.A. 88-251] was intended to overturn the ruling on standing in *In re Petition of State's Attorney, Cook County, Illinois* and to spell out the procedural rights that had been judicially viewed to have been lacking earlier"). Attorney Todd R. Bainer, who had brought *In re Petition of State's Attorney, Cook County, Illinois,* to the attention of the legislature, was the sole witness to testify regarding the proposed amendment. Bainer explained that, "[f]rom Justice [Peters'] dissent in [the case], it seems clear that the legislature intended that the customer have standing to contest any subpoena directed at [his or her] bank. Yet, because the statute doesn't spell that out, the courts are holding such a right not to exist and are denying customer's motions to quash subpoenas of their bank records on the basis of [*In re Petition of State's Attorney, Cook County, Illinois*].

"I suggest . . . some minor amendment to [General Statutes (Rev. to 1987) § 36-9*l* (a)], specifically stating that the customer has the right under the statute to [move] the court to quash the subpoena of [his or her] bank [records] . . . ." Conn. Joint Standing Committee Hearings, Banks, 1988 Sess., p. 71.

Thereafter, in *Morgan* v. *Brown*, supra, 219 Conn. 204, this court was required to determine whether P.A. 88-251 "confers standing [on] a bank customer to challenge alleged procedural deficiencies in the manner in which investigative subpoenas for his bank records were served [on] his bank." Id., 205. We concluded that it does not. Id., 209, 211–12. The plaintiff bank customers in *Morgan* had filed applications to quash four administrative subpoenas duces tecum that the banking commissioner had directed to be served on several banks in which the bank customers maintained accounts. Id., 205–206. "The trial court granted the applications to quash, in some instances because of the state's failure to pay witness fees to the banks, and in others because of the sheriff's choice of an inappropriate person to serve within the bank." Id., 206. On appeal, the commissioner claimed, inter alia, that the bank customers lacked standing to raise the issues on which the trial court had relied in quashing the subpoenas. Id., 208–209. We agreed. In reaching our conclusion, we explained that "§ 36-9*l* (b) was enacted to afford a bank customer the opportunity to contest the validity of those inquiries about his bank records for which he had been entitled to receive notice under § 36-9*l* (a) as originally enacted. Armed with notice under § 36-9*l* (a) and a right to a hearing under § 36-9*l* (b), a customer has standing to challenge the substantive propriety of the disclosure of his records, on grounds such as those at issue in *In re Petition of State's Attorney, Cook County, Illinois*: that there is no authority for the issuance of the subpoena; or that the customer's financial records are

immaterial to the investigation. To protect access to these substantive rights, a customer undoubtedly also has standing to challenge the timeliness and the manner of service of his own § 36-9*l* (a) notice. . . .

"Nothing in the text of § 36-9*l* (b) or in its legislative history suggests, however, that the legislature intended also to confer standing on a bank customer to challenge procedural irregularities in the manner in which an administrative subpoena has been served on the financial institution in which he has his account. To the contrary, Senator Casey's statement that the statute confers [on] a bank customer 'legal standing to challenge a subpoena of his bank records *in certain instances*'[10] . . . confirms a construction that such standing is not unlimited." (Citations omitted; emphasis in original.) Id., 211–12.

Thus, in both *In re Petition of State's Attorney, Cook County, Illinois,* and *Morgan,* this court construed § 36-9*l* narrowly as giving rise only to such remedies as were clearly indicated in the text and legislative history of the statute. See id., 212; *In re Petition of State's Attorney, Cook County, Illinois,* supra, 179 Conn. 106–107. Moreover, although both cases were decided prior to *Napoletano,* the analysis and outcome in each case are consistent with the analytic framework adopted in *Napoletano,* which, as we have explained, imposes on the plaintiff the considerable burden of demonstrating that, notwithstanding the legislature's failure expressly to authorize a private right of action, the legislature nevertheless intended to create one. See *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* supra, 277 Conn. 246–48. With this background in mind, we turn to our examination of the second *Napoletano* factor.

---

[10] 31 S. Proc., supra, pp. 2225–26.

In the brief legislative history surrounding the statutes, we find no indication—nor has the plaintiff pointed to any—that the legislature intended to confer standing on a bank customer to bring a private action for a violation of either § 36a-42 or § 36a-43. Indeed, to the extent that there is evidence of legislative intent with respect to civil enforcement of §§ 36a-42 and 36a-43, it indicates that the legislature intended to vest jurisdiction over their enforcement in the commissioner of banking (commissioner). See, e.g., General Statutes § 36a-50 (a) (1) and (2)[11] (authorizing commissioner to investigate, prosecute and impose fines of up to $100,000 per violation for violations of state banking

---

[11] General Statutes § 36a-50 (a) provides in relevant part: "(1) Whenever the commissioner finds as the result of an investigation that any person has violated any provision of the general statutes within the jurisdiction of the commissioner, or any regulation, rule or order adopted or issued thereunder, the commissioner may send a notice to such person by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt. The notice shall be deemed received by the person on the earlier of the date of actual receipt or seven days after mailing or sending. Any such notice shall include: (A) A statement of the time, place, and nature of the hearing; (B) a statement of the legal authority and jurisdiction under which the hearing is to be held; (C) a reference to the particular sections of the general statutes, regulations, rules or orders alleged to have been violated; (D) a short and plain statement of the matters asserted; (E) the maximum penalty that may be imposed for such violation; and (F) a statement indicating that such person may file a written request for a hearing on the matters asserted within fourteen days of receipt of the notice.

"(2) If a hearing is requested within the time specified in the notice, the commissioner shall hold a hearing upon the matters asserted in the notice unless such person fails to appear at the hearing. After the hearing, if the commissioner finds that the person has violated any such provision, regulation, rule or order, the commissioner may, in the commissioner's discretion and in addition to any other remedy authorized by law, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person. If such person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner may, as the facts require, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person. . . ."

laws); General Statutes § 36a-50 (b)[12] (authorizing commissioner to bring action in court to enjoin any act or practice that violates state banking laws); General Statutes § 36a-51 (a) (authorizing commissioner to "suspend, revoke or refuse to renew any license issued by the commissioner" for violation of state banking laws). In fact, the only exception to what appears to be the commissioner's otherwise exclusive jurisdiction over civil enforcement of the state's banking laws is General Statutes § 36a-58, which establishes a private right of action in a financial institution to recover damages from its officers or directors who are found by the commissioner to have violated any provision of the banking laws.[13] This court previously has considered the exis-

---

[12] General Statutes § 36a-50 (b) provides: "Whenever it appears to the commissioner that any . . . person has violated, is violating or is about to violate any . . . provision [of the General Statutes within the jurisdiction of the commissioner, or any] regulation, rule or order [adopted or issued thereunder], the commissioner may, in the commissioner's discretion and in addition to any other remedy authorized by law: (1) Bring an action in the superior court for the judicial district of Hartford to enjoin the acts or practices and to enforce compliance with any such provision, regulation, rule or order. Upon a proper showing, a permanent or temporary injunction, restraining order or writ of mandamus shall be granted and a receiver or conservator may be appointed for such person or such person's assets. The court shall not require the commissioner to post a bond; (2) seek a court order imposing a penalty not to exceed one hundred thousand dollars per violation against any such person found to have violated any such provision, regulation, rule or order; or (3) apply to the superior court for the judicial district of Hartford for an order of restitution whereby such person shall be ordered to make restitution of any sums shown by the commissioner to have been obtained by such person in violation of any such provision, regulation, rule or order, plus interest at the rate set forth in section 37-3a. Such restitution shall, at the option of the court, be payable to the receiver or conservator appointed pursuant to this subsection, or directly to the person whose assets were obtained in violation of any such provision, regulation, rule or order. Whenever the commissioner prevails in any action brought under this subsection, the court may allow to the state its costs."

[13] We note that, in addition to the civil remedies provided under General Statutes §§ 36a-50 through 36a-53, General Statutes § 36a-45 also authorizes criminal penalties for violations of §§ 36a-42 and 36a-43. Specifically, § 36a-45 provides: "(a) Any officer or employee of a financial institution who knowingly and wilfully furnishes financial records in violation of sections 36a-41 to 36a-44, inclusive, shall be guilty of a class C misdemeanor.

tence of such alternative remedies and procedures for the enforcement of a statute as strong, if not conclusive, evidence of legislative intent *not* to create additional implied remedies under the statute. See, e.g., *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 257–59 (no implied private right of action under state fair housing law, General Statutes § 8-37cc [b], when statutory scheme vests oversight and enforcement in legislative and executive branches); *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 373–78 (no implied private right of action under Liquor Control Act when, with only one exception, statutory scheme vests enforcement of act in department of consumer protection); cf. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 250–53 (recognizing implied private right of action under state managed care law when legislature did not expressly vest administrative agency with responsibility for enforcement). This is so because the existence of express remedies within a statute indicates that the legislature knows how to create remedies under the statute and, more importantly, that the legislature would have provided the remedy sought by the plaintiff if it had intended to do so. See, e.g., *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 770–71 n.17, 900 A.2d 1 (2006) (legislature knows how to enact legislation consistent with its intent); *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989) (legislature knows how to use limiting terms when it chooses to do so); see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 295, 819 A.2d 260 (2003)

"(b) Any person who knowingly and wilfully induces or attempts to induce any officer or employee of a financial institution to disclose financial records in violation of sections 36a-41 to 36a-44, inclusive, shall be guilty of a class C misdemeanor."

In addition, General Statutes § 36a-57 (b) provides: "Any person who wilfully and deliberately violates any provision of the banking law for which no other penalty is provided by law shall be imprisoned not more than one year or fined not more than one thousand dollars, or both, for each offense."

(applying "tenet of statutory construction known as expressio unius est exclusio alterius, translated as the expression of one thing is the exclusion of another" [internal quotation marks omitted]); *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 101, 653 A.2d 782 (1995) ("[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive" [internal quotation marks omitted]). Accordingly, in the present case, we must assume that if the legislature had intended to create a private right of action under § 36a-42 or § 36a-43, it would have done so explicitly, as it did in establishing the authority of the commissioner to investigate and seek redress under General Statutes §§ 36a-50 through 36a-53 for alleged violations of the banking laws, or as it did in establishing criminal penalties under § 36a-45 for violations of General Statutes §§ 36a-41 through 36a-44.

The plaintiff maintains, however, that the legislature must have intended to create a private right of action under §§ 36a-42 and 36a-43 because certain of the statutes' provisions are patterned after the federal Right to Financial Privacy Act of 1978 (RFPA), 12 U.S.C. § 3401 et seq., which, unlike our own statutes, expressly authorizes a private action for damages. See 12 U.S.C. § 3417 (2000).[14] We are not persuaded. The RFPA was enacted

---

[14] Title 12 of the United States Code, § 3417, provides in relevant part: "(a) Liability of agencies or departments of United States or financial institutions

"Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of [the RFPA] is liable to the customer to whom such records relate in an amount equal to the sum of—

"(1) $100 without regard to the volume of records involved;

"(2) any actual damages sustained by the customer as a result of the disclosure;

"(3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and

"(4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . ."

*after* the enactment of what is now §§ 36a-42 and 36a-43, and, therefore, it is highly unlikely that the federal statute served as a model for the state statutes. Moreover, even if the state statutes had been modeled after the RFPA, the fact that they do not contain an enforcement provision similar to that contained in 12 U.S.C. § 3417 is, in our view, more probative of a legislative intent to *omit* such a provision than to provide it.

We also reject the plaintiff's contention that a legislative intent to create a private right of action can be inferred from General Statutes § 36a-44a, which requires all state financial institutions to comply with the Gramm-Leach-Bliley Financial Modernization Act of 1999 (GBLA), 15 U.S.C. § 6801 et seq. Specifically, the plaintiff argues that because the GBLA requires all financial institutions to comply with the RFPA, and because the RFPA permits private enforcement actions, the legislature must have intended to create a private right of action under §§ 36a-42 and 36a-43. After carefully reviewing the GBLA, however, we find nothing in it to support the plaintiff's contention that it incorporates by reference the provisions of the RFPA. Moreover, even if it did, we highly doubt that the legislature would have taken such an attenuated path in creating a private cause of action under §§ 36a-42 and 36a-43.

Finally, we also reject the plaintiff's contention that a private right of action may be inferred from General Statutes § 36a-43 (d), which provides in relevant part that "[n]o . . . financial institution shall be held civilly or criminally responsible for disclosure of financial records pursuant to a certificate, subpoena, summons, warrant or court order which on its face appears to have been issued upon lawful authority." Specifically, the plaintiff maintains that "[a] finding that a private right of action exists is especially appropriate . . . [because § 36a-43] itself refers to 'civil responsibility' for violation of the statute." As we have explained,

however, in addition to the criminal penalties established under § 36a-45, the legislature also has vested the commissioner with the authority to impose various civil penalties for violations of § 36a-43. See General Statutes §§ 36a-50 through 36a-53. The plaintiff has pointed to no evidence in the legislative history of § 36a-43 (d) to suggest that the legislature was referring to anything other than the civil responsibility that might be imposed on a bank by virtue of these other statutes.

We turn, therefore, to the third and final *Napoletano* factor, which requires a determination of whether recognition of an implied private right of action under § 36a-42 or § 36a-43 is consistent with the underlying purposes of the statutory scheme. The plaintiff argues that it is because recognizing such a right is "the most effective way to guarantee the confidentiality of a customer's records" and because "it is the aggrieved party, not the banking commissioner, who has the most at stake and is the most likely to seek redress" for alleged violations of the statutes. We reject the plaintiff's contention.

Indeed, we rejected a similar argument in *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, supra, 277 Conn. 238, in which the plaintiffs, a low income resident of a certain neighborhood in the city of Hartford and an association that represents the interests of such residents, had contended that, notwithstanding the fact that the legislature had vested enforcement of General Statutes § 8-37cc (b)[15] in the legislative and executive branches, an implied private right of action also should be inferred because the remedies provided under the statute were inadequate and because the legislative history surrounding the statute

[15] General Statutes § 8-37cc (b) provides: "Each housing agency shall affirmatively promote fair housing choice and racial and economic integration in all programs administered or supervised by such housing agency."

clearly indicated that the plaintiffs were its intended beneficiaries. Id., 241–42, 258. In rejecting this argument, we explained that, although it might further the goals of § 8-37cc (b) to permit the plaintiffs to bring an enforcement action, the plaintiffs had "misconstrue[d] the court's role in applying the *Napoletano* test. We do not decide whether the legislature should have supplied a private right of action; rather, we consider whether and how remedies *were* provided as an indication of the legislature's intent to confer a private right of action." (Emphasis added.) Id., 258. We further stated that, "[i]n determining whether it would be consistent with the purpose of the statute to permit such an action, [which was the question presented under the third prong of *Napoletano*, the court] must look not only to the broad purpose of the . . . [statute], but also to the more specific purpose evidenced by the choices made by the legislature as to how the particular provision would ensure enforcement of its . . . goals." Id., 258–59. Thus, we concluded that, because the legislature had vested enforcement of § 8-37cc (b) in the legislative and executive branches, it was not our place to override that express intent by engrafting additional remedies onto it. See id., 259.

The same reasoning applies in the present case. Even if we were to conclude that it would further the goals of §§ 36a-42 and 36a-43 to permit bank customers to bring a private action to enforce either or both statutes, it is not our province to override the clear preferences of the legislature regarding how the statutes are to be enforced, as evidenced by the remedies that were adopted. Accordingly, the plaintiff cannot meet his burden of establishing that none of the three *Napoletano* factors militates against the recognition of a private right of action under § 36a-42 or § 36a-43.

Accordingly, the answer to the first certified question is: No. Because we conclude that there is no implied

private right of action under § 36a-42 or § 36a-43, we need not answer the second and third certified questions.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.